HARRY E. POWELL, Next Friend of Lucy Tennelle Emory Jenkins, et al., Infants,

*vs.*

MARY FORWOOD MACKENZIE.

*Resulting Trust—Purchase by Husband—Presumption of Advancement—Evidence.*

Where the husband furnishes the consideration for the purchase of property, which is conveyed to the wife, the transaction involves *prima facie* an advancement by the husband to the wife, and a trust in favor of the husband can be established only by evidence manifesting a clear intention to that effect.

pp. 270, 271

Where such an intention is sought to be drawn from declarations of the nominal purchaser, the declarations must be direct and certain, and should, where possible, be corroborated by other facts and circumstances.　　　　p. 271

Declarations by the husband, made long after the purchase of the property and the execution of the conveyance to the wife, were inadmissible for the purpose of showing a trust in his favor.　　　　p. 272

That the wife, after taking title to the property in question, made two wills in favor of her husband and his issue by a previous marriage, *held* not to involve an admission by her that she held the property in trust for him, and to be without any probative force to prove a resulting trust.　　　　p. 273

That by having the property conveyed to his wife the husband stripped himself of the means of making a suitable provision for his daughter by a previous marriage, who was a helpless invalid suffering from an incurable disease, does not tend to show an intention on his part that the wife should hold the property subject to a trust in favor of himself or his issue.

pp. 273, 274

That the husband collected the rents from the property thus conveyed to the wife, and exercised a general supervision thereover, does not show a trust in his favor, in the absence of evi-

dence tending to show that in so doing he was acting in pursuance of an agreement made contemporaneously with the conveyance.                                                    p. 275

*Decided December 2nd, 1920.*

Appeal from the Circuit Court of Baltimore City (STANTON, J.).

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Thomas Mackenzie* and *L. Wethered Barroll,* for the appellant.

*John L. G. Lee* and *James R. Brewer,* for the appellee.

OFFUTT, J., delivered the opinion of the court.

The only question presented by this appeal is whether a resulting trust in favor of George Norbury Mackenzie arose from certain conveyances of real property located in Baltimore City, made at his direction to Mary Forwood Mackenzie, his wife. George Norbury Mackenzie, who died on February 11, 1919, was twice married. His first wife, Lucy Tennelle Mackenzie, died on January 27, 1900. As a result of this marriage there were three children, George Norbury Mackenzie III and Anna Vernon Mackenzie, adults, both of whom survive, and Mary Mackall Mackenzie Jenkins, who predeceased him, leaving to survive her three children, all of whom are now living. His second wife was Mary Forwood Mackenzie, whom he married on June 14, 1902, and who is the appellee in this case. There were three children of this marriage, of whom one, Cosmo Glenn Mackenzie, an infant, survives, the other two having died in early infancy.

At the time of his second marriage Mackenzie appears to have been in somewhat moderate circumstances. Although he was a member of the bar, he did not actually practice his

profession, but was then engaged in business as a stockbroker. This business was declining, and some time in 1904 he sold his seat on the stock exchange and gave up that business entirely. Later he undertook the preparation of a genealogical work known as Colonial Families of America, from which he derived an annual income of about $1200, and he also received an annual income of about $500 for other work of a similar character. He owned or controlled at that time a warehouse known as 22 South Charles Street, yielding about twelve or fifteen hundred dollars annually, and two houses on Park Avenue, in one of which he resided, and some smaller unproductive properties. The revenue from the warehouse property on Charles Street ceased when that building was destroyed in the great fire in Baltimore in 1904. Owing to some difficulty concerning the title he did not rebuild that warehouse, but in 1905 purchased another warehouse property known as 109 South Charles Street, which by his direction was conveyed to the appellee, who joined with him in giving a mortgage for the full amount of the purchase price. Subsequently he paid, in the reduction of this mortgage and for the improvement of the property, sums aggregating over ten thousand dollars. Following the fire in 1904 and the resulting reduction in his income, his health failed and, at or about that time the appellee, for the purpose of helping him financially, began to take boarders and roomers at the home 1808 Park Avenue, and continued to do so until a month or two before her husband's death. On June 27, 1904, Harry D. Mackenzie conveyed to the appellee the dwelling property known as 1808 Park Avenue, together with other property not involved in this proceeding, and on January 23, 1905, Samuel B. Fauth and wife conveyed to her the warehouse property known as 109 South Charles Street. These conveyances were unconditional and for an expressed consideration of five dollars in each instance, and were procured by George Norbury Mackenzie, who furnished the consideration for them. Following the first of these conveyances, the appellee

on July 1, 1904, executed a will by which all of her property was left to her husband or in the event of his death to her issue by him, and failing such issue to his issue by his former marriage; and about a year after the second conveyance she executed a second will in which she left all of her property to her husband for his life, in trust, to divide and distribute the net income therefrom between himself and his children then living at such times and in such shares as he should deem proper. The trust thus created was to continue for ten years after his death and at its termination the estate was to be divided between his children and their issue, and if he left no children or direct descendants to survive him, then to his heirs.

On January 27, 1912, George Norbury Mackenzie executed a will in which he requested his wife, the appellee, to convey these properties to George N. Mackenzie III upon certain trusts, the substantial terms and conditions of which may be thus stated: one-fifth of the net proceeds was to be applied to the use of his daughter Anna, who was an invalid, during her life, one-fifth to go into a sinking fund to take care of contingencies, and the balance of the net income to be paid to his wife for her support and that of her son Cosmo, then an infant four years of age, during her life or widowhood, and upon her death or remarriage the trust estate was to be distributed to the testator's living issue and the children per stirpes of any deceased child or children "he may have had."

After the death of George Norbury Mackenzie in 1919, his son George Norbury Mackenzie III sought to have the appellee convey the property to him in compliance with this testamentary request, and upon her refusal the bill of complaint in this case was filed, and from the decree dismissing it this appeal was taken on behalf of the infant children of Mary Mackall Mackenzie Jenkins, the deceased daughter of the testator.

The theory of the bill is that the conveyances above referred to were not designed to convey the absolute title in the

property described in them to the appellee, but that it was the intention of her husband that she should hold the property conveyed by them in trust for such purposes as he might declare.

A careful examination of the record fails, however, to disclose any evidence which can be said to support that theory, or to show that Mackenzie intended these deeds to be anything other than what they purported to be, or to have any effect different from that which was apparent from their language.

The rule that where one person takes the title to property, which is paid for by another, in the absence of any facts explanatory of such circumstance, a resulting trust arises in favor of the person supplying the purchase money, is settled beyond question in this State (*Dixon* v. *Dixon*, 123 Md. 55), but the exception to this rule, that where the person supplying the purchase money is under a natural, moral or legal obligation to provide for the person taking the title, the purchase is to be considered as an advancement or a settlement as the case may be, is equally well settled and quite as generally recognized. The cases illustrating the application of these principles are collected and analyzed in the case of *Dixon* v. *Dixon, supra,* in which JUDGE BURKE, speaking for the court, says, citing 4 *Kent,* 306: "If the person in whose name the conveyance of property is taken by one for whom the party paying the purchase money is under a natural or moral obligation to provide, no equitable presumption of trust arises from the fact of the payment of the money, but on the contrary the transaction will be regarded, *prima facie,* as an advancement for the benefit of the nominee. In that case, therefore, it will be for the party who seeks to establish a trust in behalf of the payer of the purchase money to displace by sufficient evidence the presumption that exists in favor of the legal title." "This presumption exists in the case of the purchase by a husband in the name of his wife. Indeed the presumption is stronger in the case of a wife than of a

child, for she cannot at law be the trustee of her husband. *Mutual Fire Ins. Co.* v. *Deale,* 18 Md. 26."

In *Groff* v. *Rohrer,* 35 Md. 336, this Court said in regard to the application of this principle: "The grantor was under a moral obligation to make provision for the comfort, support and maintenance of the wife, and the principles governing in the case of strangers do not apply * * *. The relation of these parties, husband and wife, if there were no proof of a valuable consideration in the deeds, furnished grounds of meritorious consideration, to prevent the implication that the husband merely intended that she should be a trustee of the property conveyed, for his benefit, and it would be against any just principle of equity to imply a constructive trust under such circumstances.

This presumption is one of fact and not of law and may therefore be rebutted by proof showing a contrary intention on the part of the purchaser. But the evidence of such an intent should be substantial and convincing, for the "principle of law that a purchase is presumed *prima facie* to be an advancement is not to be frittered away by mere refinements." *Finch* v. *Finch,* 15 Ves. 43. And where such an intention is sought to be drawn from declarations of the nominal purchaser the "declarations must be direct and certain, and where possible should be corroborated by other facts and circumstances; for courts will not act upon mere declarations if they are conflicting, vague or inconsistent with themselves." 1 *Perry, Trusts,* Sec. 147.

It follows from what has been said that where, as in this case, the nominal purchaser is the wife, and the person supplying the consideration the husband, that the representatives of the husband, in attempting to show that the property conveyed to the wife was held by her in trust for the husband, not only assumed the burden of proof, but were obliged to overcome a presumption arising from the relationship of the parties against such a contention, and this could only be done by evidence "manifesting a clear intention that there should

be such a trust." *Johnson* v. *Johnson,* 96 Md. 148. It is said in *Mutual Ins. Co.* v. *Deale, supra,* and approved in the case last cited, that the evidence "which is used for the purpose of displacing the title of the nominee, unless it is founded on his own admission or declaration of trust, must be contemporaneous with the purchase." "Subsequent acts or declarations of the purchaser, or any other matter arising *ex post facto* cannot be admitted for the purpose; although they be of the most unequivocal and conclusive description."

In passing upon the questions involved in this appeal, this Court is not at liberty to consider the effect of its decision upon the fortunes of the respective parties, nor is it aided in arriving at a proper conclusion by any consideration of the physical or mental condition, or the fiscal necessities, of the parties to the cause. It is confined entirely to a consideration of the evidence actually in the case, its proper weight and effect and its relation to the principles of law by which the rights of the parties to the cause are determined and controlled.

Applying these settled principles to the facts of this case and examining the testimony in their light, in our opinion, the appellant failed to make out a case and the bill of complaint was properly dismissed. There was no testimony of any statements or declarations of either the appellee or her husband made at the time the properties were conveyed. There was an offer to prove oral declarations of the husband in his own favor made long after the execution of the conveyances referred to, tending to show the existence of a trust, and also similar declarations and statements in his will executed seven years or more after these conveyances. Manifestly such testimony was inadmissible and could not be considered. The only other evidence offered by the appellant was: *first,* that the appellee made certain wills in her husband's favor after she took title to the property; *second,* that at the time when the deeds were made her husband had a helpless and dependent invalid daughter for whose care and

support he was obliged by every principle of humanity to make some provision; *third,* that after the death of her husband the appellee told her step-son, George Norbury Mackenzie III, that she would carry out the trust provisions contained in her husband's will; *fourth,* that her husband collected the rents and profits from these properties during his life and paid for their upkeep.

Without stopping to discuss this testimony in detail, it may be said that it is not sufficient to establish a resulting trust in favor of George Norbury Mackenzie. The fact that the appellee first made a will devising all her property to her husband and in the event of his death to go first to her children and only in the event of her death without issue to the children of his first marriage; and that she made a second will in which the property was left in trust for the use of her husband during his lifetime and for the use of such of his children as should then be living and the issue of any deceased child or children of his for a period of ten years after his death, and then to be divided equally among the issue of his said children, and failing such issue then to the heirs at law of her husband, was not *per se* an admission on her part that she did not hold the absolute title to the property which she undertook to devise by it, but may just as well have been considered an assertion on her part that she owned the property absolutely and was therefore empowered to dispose of it by will. There was no recital or statement in either will specifically referring to the property involved in this controversy, or recognizing any obligation on her part to dispose of it in any particular manner, or warranting the inference that what she did was not done voluntarily by her. These wills are without any intrinsic probative force to prove a resulting trust and derive none from any relation to or connection with any other fact in the case.

Nor could the mere fact, even if it were proved, that by having the property conveyed to his wife Mr. Mackenzie stripped himself of the means of making suitable provision

for the care and maintenance of his daughter, who was at the time these conveyances were made a helpless invalid, suffering from an incurable, progressive and peculiarly distressing disease and who was entirely dependent upon him, support the inference that he intended these conveyances to have any other or different meaning than that which was apparent from the expressions contained in them. The wisdom or the propriety of his conduct is not involved in this inquiry, but the sole question presented is whether he actually intended his wife to hold the property absolutely or in trust. The presumption is, in the absence of any evidence of contemporaneous conduct or declarations to the contrary, that he intended them to convey the absolute title in the property to the appellee and, no matter how unfortunate the result of his action may have been, there is no principle of law under which the courts would be authorized to disregard his actual intention.

Nor can any greater weight be given the testimony offered to show that the appellee by her conduct and declarations subsequent to her husband's death so far admitted the existence of the trust that she estopped herself from denying it. This testimony is so vague and inconclusive and is the subject of so much conflict that no definite conclusions can be drawn from it at all. It is true that George Norbury Mackenzie III testified that he was "assured" by the appellee that the trust attempted to be created by his father's will would be carried out, and that she co-operated with him in an effort to sell the property known as 109 South Charles Street upon the understanding that the proceeds of the sale were to become a part of the *corpus* of such trust estate, but his testimony in important particulars is not corroborated, is at variance with the admitted facts, and is contradicted by the appellee, and, giving it the greatest weight which could be allowed it, cannot be said to prove that the appellee admitted the existence of the supposed trust, nor even if it were true would it be sufficient to establish an estoppel.

Nor can the fact that the appellee's husband collected the rents from the property and exercised a general supervision over it after the execution of the conveyances be given the significance which the appellant seeks to attach to it, in the absence of any evidence tending to show that in so doing he was acting in pursuance of an agreement made contemporaneously with the conveyances of the property. There was no such agreement, nor was there anything in the case to show that in so acting he was not acting as the appellee's agent.

For the reasons stated, and after a careful examination of the authorities, we are of the opinion that there was no error in the decree appealed from nor in the rulings of the court on the evidence.

The motion of the appellee to dismiss the appeal in this case cannot prevail. The appeal was from a final decree dismissing the bill of complaint and was taken under the authority of Section 26, Article 5, Code Pub. Gen. Laws, and not therefore under the provisions of *Section* 31, *Ibid,* and since the order for appeal was taken and the record transmitted within the time prescribed by the statutes, the case is properly in this Court. The motion to dismiss will be therefore overruled and the decree affirmed.

*Decree affirmed, with costs.*