Including Cases of October Term, 1922, and
January Term, 1923.

## MARIA HUGHES ET AL.

*vs.*

## DANIEL McDOUGALL, JR.

*Resulting Trust—Evidence.*

When the proof of a resulting trust rests in parol, it must be clear, strong, and unequivocal, and must establish the fact of the payment of the purchase money by the alleged beneficiary beyond doubt.                                             p. 2

On a bill to establish a resulting trust in favor of plaintiff in property the legal title to which was conveyed by the vendor to plaintiff's father, since deceased, *held* that the evidence established that the property was purchased by plaintiff and paid for with money advanced by the father, and that the money advanced had been repaid to the father.                    pp. 3-6

Charges, in general language, of fraud, deceit, and misrepresentation, are not regarded as sufficient unless accompanied by attendant circumstances upon which the charges are based.    p. 6

*Decided November 23rd, 1922.*

Appeal from the Circuit Court No. 2 of Baltimore City (STUMP, J.).

Bill by Daniel McDougall, Jr., against George W. Cameron, administrator of Daniel McDougall, deceased, James McDougall, Maria Hughes, Sadie Debnam and Catherine M.

Brenner. From a decree in favor of plaintiff, the three last named defendants appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Laurie H. Riggs* and *George E. Robinson,* for the appellants.

*Charles Lee Merriken,* with whom was *Frank D. Noel* on the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This suit originated in a bill of complaint filed by the appellee in this case against the defendants and the administrator of the deceased father of the parties, in which it was sought to have the court declare a resulting trust in favor of Daniel McDougall, Jr., with regard to the property 34 North Bentalou Street, and to require the conveyance of that property free of any trust to the appellee herein. The law governing resulting trusts and their establishments is, with an exception to be hereafter noted, practically clear and well defined. To establish such, the character of proof which is required when that proof rests in parol, must be "clear, strong and unequivocal and must establish the fact of the payment of the purchase money by the alleged beneficiary beyond doubt." Again, it is said that there must be clear indisputable proof that the purchase was made for the party claiming such trust and the purchase money paid by him. 26 *R. C. L.,* page 1231. Many cases are there cited as enforcing this view, among them *Hollida* v. *Shoop,* 4 Md. 465.

The case so cited only by inference supports this view and was decided by JUDGE LEGRAND in 1853. The facts, however, in that case, were quite dissimilar and the case turned upon an application of the Statute of Frauds. The text of *Ruling Case Law* is, however, fully borne out in the follow-

ing cases: *Brawner* v. *Staup,* 21 Md. 328; *Dryden* v. *Hanway,* 31 Md. 254. And no where among the adjudicated cases in this State has it been more succinctly stated than was done by JUDGE MILLER in *Witts* v *Horney,* 59 Md. 584, where he says the proof "must be clear, direct and explicit." For this statement he cites, among other Maryland cases, that of *Thomas* v. *Standiford,* 49 Md. 181, and the rule thus laid down has been undeviatingly followed in many cases since. *Pickett* v. *Wadlow,* 94 Md. 564; *Miller* v. *Miller,* 101 Md. 600, and the very strong opinion of JUDGE BURKE in *Dixon* v. *Dixon,* 123 Md. 44.

The effect of this rule is necessarily to throw the burden of proof of the establishing of the alleged trust upon the party who sets it up, a view which has been adopted in most of the states of this country.

This is practically the only legal question which the present record presents and the conclusion of the case must therefore rest upon the facts and the extent to which Daniel McDougall, Jr., has met the burden of proof which the law casts upon him.

It becomes necessary, therefore, to review with some pains the evidence given in the case, making proper allowance for the source from which that evidence comes, and the extent to which it may be affected by the bias of the witness under examination. The bill itself is not as clear in some ways as was to have been desired. It recites that in July, 1919, Daniel McDougall, Jr., negotiated for the purchase of the property on Bentalou Street and at that time paid some three or four hundred dollars of the agreed purchase money, which was, all told, in the neighborhood of two thousand dollars. The amount is variously spoken of as $2,000 and $2,150; nor is there anything in any of the evidence to establish with absolute clarity which of these two sums was the correct amount. Mr. Dunphy, from whom the property was bought, speaks of it as a sale for $2,000; the appellee describes it as a purchase for $2,150.

In July, 1919, Daniel McDougall, Jr., apparently did not have the money with which to complete the purchase, and the bulk of the purchase money was paid by his father, Daniel McDougall, who took a deed for the property in his own name, and it is from that circumstance that the present contention arises.

The appellee claims that he paid $2,150 for the property to his father in November, 1919, and it is clearly shown that, in one of the early days of December of that year, Daniel McDougall deposited that amount with the Equitable Trust Company. This payment by Daniel McDougall, Jr., was further evidenced by the production of a cancelled check drawn by him for the $2,150, corresponding with an entry of that amount on the deposit ticket of the Equitable Trust Company.

It is a little difficult to see how if McDougall, Jr., had paid at the commencement to Mr. Dunphy some three or four hundred dollars, there should have been an unpaid balance amounting to $2,150 to be paid to his father. It is of course possible that there were other items entering into this payment, though there is no direct evidence to that effect, but, for some time prior to the purchase, both of the McDougalls had been engaged in the saloon or near beer saloon business conducted by the father, and there may, although this is entirely conjectural, have been items for which the son was indebted to the father, which were included in the $2,150 check.

Daniel McDougall died on the 3rd of February, 1920, but without having executed a deed of the Bentalou Street property to his son, and that property was returned by Mr. McDougall's administrator as a portion of his estate, the title being ostensibly in him. Then, in the sequence of events, a paper was signed by all of the parties to this cause, in which this particular piece of property is recognized as belonging to Daniel McDougall, Jr., and on the strength of it he demanded of his father's administrator a conveyance of the property.

Soon thereafter Mrs. Hughes, Mrs. Debnam and Mrs. Brenner repudiated this paper which they had so signed and, in their answers to the bill of complaint, assert that it was obtained from them by fraud, deceit and misrepresentation, but without stating any facts upon which these charges of fraud, deceit and misrepresentation were based. Then it was that the appellee instituted this proceeding. The evidence of Mr. McDougall, Jr., and that of his sisters, is widely at variance, and quite a number of family connections, such as Mrs. Annie Oliver, Mrs. Schlipper, and one or two others, were unmistakably partisans of one or the other of the parties, and it is impossible to read the evidence without coming to the conclusion that their testimony has been, it may be unconsciously, a good deal colored by reason of their partisanship. On the other hand, there are other witnesses, such as Sergeant George H. Schuman, T. J. Shaugnessy and Police Sergeant M. J. Cooney, whose reason for bias, if there was any, does not appear, whose evidence is entirely and unequivocally in favor of Daniel McDougall, Jr. They purport to give accounts of conversations with McDougall, Sr., in which he expressed his confidence in and pleasure at the course then being followed by his son, Daniel McDougall, Jr. They are not all able to speak in positive language as to the amount of the consideration, but a number of them do testify to the statements by McDougall, Sr., that the money which he had paid out had been repaid to him.

So much for the verbal testimony. There are a few other facts that seem to be of light weight when taken singly, yet have considerable force in connection with the verbal testimony of witnesses. For example, immediately after the purchase, Daniel McDougall, Jr., moved into the Bentalou Street property. He paid bills for some repairs on the property, many of which were inconsiderable in amount and of a character ordinarily falling to the lot of a tenant rather than a landlord, but be that as it may, the bills for them were paid by him. Also the work about the yard done by Holly, a work-

man employed by his father, was paid for by him. He paid no rent for the property to either the father or to the administrator of his father's estate. The taxes on the property, though not paid for a long time, and even not until after the situation had begun to become tense between Daniel and his sisters, were, nevertheless, paid by him, and were not paid out of his father's estate.

The allegations, in the answers of the sisters, of fraud, deceit, and misrepresentation, are repeated by them in their evidence, but always in general language, with no statement of details for the justification of their charges. It is easy in general language to charge fraud, deceit, and misrepresentation, but it is never regarded in law as sufficient unless accompanied by attendant circumstances upon which the charges are based, and which, as has been noted, are lacking in the present instance.

While it was to have been desired that the proof in this case for the establishment of a resulting trust should have been more explicit than it is, nevertheless the great preponderance of unbiased evidence is all in favor of such a trust having been intended. The two police sergeants, reference to whose evidence has already been made, likewise testify to statements of Daniel McDougall that the property was intended for the son when he should have paid for it, all of which points in the same direction.

Upon a careful review of all the evidence in the case, it appears to this Court that the decree of the court below was correct, and that decree will be affirmed.

*Decree affirmed, with costs.*