# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed October 28, 1924.

LEON B. ROBINSON, ET AL.,
VS.
ESTELLE ROBINSON, ET AL.

*Isaac Lobe Straus, J. Paul Schmidt* and *Julius P. Robinson* for complainants.

*Vernon Cook* and *George Ross Veazey* for defendants.

DAWKINS, J.—

This case revolves around unfortunate family differences, which make it difficult to reach a satisfactory conclusion. A month was consumed in taking the testimony and hearing the arguments of counsel, at the termination of which all the facts were very familiar to the Court. The very able and exhaustive briefs furnished after the presentation had been concluded

has caused an extended consideration and examination of the authorities.

The essential facts are comparatively small in number. The law bearing on these facts is fairly well established. Much immaterial and irrelevant matter has been injected into the case. Much of the testimony may be proper and useful in determining a will contest, which is pending in another Court. With this latter contest, however, this Court has nothing to do at this time.

The bill herein seeks in effect to have certain property standing in the name of Mrs. Selina Robinson at the time of her death impressed with a trust for the benefit of the representatives of William Robinson, her husband (who predeceased her) with prayers for such proper injunctions or restraining orders as may be necessary to prevent Mrs. Robinson's representatives from disposing of the real estate in South Carolina, the money in bank, and the silverware, and that the property in question may be declared to belong to the heirs of the said William Robinson, instead of to Selina Robinson or of the beneficiaries under the will of the said Selina Robinson. The defendants deny the allegations of the Bill, saying that William Robinson failed in business about forty years ago, that all of the property then owned by him was applied to the payment of his debts. That she, Selina Robinson, borrowed $6,000.00 and started in business in her own name, that she bought the property in South Carolina and carried on the business from that time and that the property mentioned is hers and was her property up to the time of William's death and now passes under her will.

With the incapacity of William Robinson to attend to any business, the improper influences exerted over him by the wife or daughter, etc., during the last four or five years of his life in Baltimore, prior to his death, we are not immediately concerned. The fact of the later estrangements should not determine the matter, in view of the circumstances of this case.

For over thirty years William Robinson was admittedly in good physical and mental health, and the property was all that time in the name of Mrs. Selina Robinson.

This matter must be considered without regard to the great mass of testimony as to starving the old gentleman, exerting undue influence over him, the mother or daughter keeping the sons from seeing their father, etc., during these later years.

Mr. Robinson died February 23, 1922.

Mrs. Robinson died December, 1923.

Mrs. Robinson made a will (after her husband died) dated December 12, 1922.

Mr. Robinson apparently left no will.

All the parties to this suit are either children or grandchildren of William Robinson and Selina Robinson, save one of the administrators, Mr. Suls, who is not apparently of the family. There seems to be no administrator of William Robinson's estate. (There should appear to be one as a necessary party to the cause.)

After Mrs. Robinson's death, her daughter Estelle adopted her mother's answer. One of the executors admitted the facts of the bill, the other denied them. There has been some shifting of place from one side to the other of the cause. Some plaintiffs at the time of the hearing (and some before that time) withdrawing as plaintiffs and becoming defendants in name only, some for the purpose of deliberately enabling them to become competent witnesses for the plaintiff and to aid all in their power the contention of the plaintiff.

The bill was filed against the mother, almost immediately after the death of the father and before he was buried. There are seven or eight children, the majority of whom are in sympathy with the purpose of the bill. It would hardly be profitable to attempt to go over the testimony in any detail. Testimony in a large part to support the bill or to deny its allegations comes chiefly from persons who were very young, some only four or five years of age, at the time of the occurrences about which they testify with great detail. Unusual memories as to details sometimes exist, but they are usually confined to a few individuals. Children of such tender years usually do not grasp the details of a business transaction, such as getting money out of a safe to pay for property, discussing who is best to hold the property

and many other details that we have heard, yet this family did appear to have talked over these things and business matters generally in the company of the whole family, including the children.

This sort of testimony is not satisfying, although it may be entirely correct. It is surely true that Mr. William Robinson was in business in Columbia, he failed, he went to Greenville, South Carolina. A business was again started in the name of S. Robinson, his wife. This business prospered. There were unsatisfied creditors at the time of the failure, who, so far as the testimony discloses, have never been satisfied. Surely they had not been satisfied a short time before Mr. Robinson's death.

If it be true, it is not pleasant to believe that William Robinson *failed rich* or had money in his safe so immediately with which to start in business, when his creditors were unpaid. Mr. Robinson has been shown by many witnesses to have been in every way an honorable man and nothing is suggested as reflecting on the honor of Mrs. Selina Robinson, in any way.

Under such circumstances it is just as reasonable to believe that Mrs. Robinson borrowed the money to take over the business as that Mr. Robinson had it in his safe. It has been suggested that the wife had no credit. What could the father have had in that regard when he had just failed with creditors unpaid? The details of the testimony of the several witnesses as to these things need not be discussed save in a general way. It is clear that Mrs. Robinson did exercise the fullest acts of ownership over the property, paying expense bills, taxes, repairs, receiving rents, dealing with real estate agents, etc. Doing all of these things for a long period of years and especially during the over twenty years' residence in Baltimore.

There is no definite evidence that in this time the sons were kept from him, save perhaps in the very later years. There is no evidence that the sons ever talked with the father about having the property reconveyed, save perhaps, the talk sometime before he died, about his son, Larry, satisfying the unpaid creditors and the talk to the grandson about the property coming back. During the period of his illness there is every reason to believe that the wife was kind to Mr. Robinson. He never complained of her treatment.

It is very natural for the sons to love and serve the father and supply him with food and clothing, but nowhere does the Court find any expression from the father that the wife did not own the property or that he owned it. It is easy and natural for people to say "my property," but that does not establish ownership.

Certainly the wife used no influence at the time the property was put in her name to have it so placed, taking the plaintiffs' testimony as given. There was no protest against the wife opening a bank account in her name and so continuing it. So matters went on for ten or more years in South Carolina and twenty years in Baltimore.

The only apparent reason for the wife having the business in her name in the first instance was because Mr. Robinson failed in business; he had been sued, he wished to avoid seizure of his property. If this was the intent the new business so far as the interest of William Robinson was concerned, could well be considered a gift or advancement to Mrs. Robinson.

The law recognizes such gifts or advancements. To rebut a paper writing of the character filed in this case (deed placing the property in the name of Selina) parol evidence must be clear and satisfying in character. Among other cases cited by the plaintiff is that of Dorman vs. Dorman, 187 Illinois 159. In this case the wife's admissions of the husband's ownership as well as possession and management by the husband of the property was shown. No such condition is proven in this case.

The Court should view with the greatest caution evidence impeaching an instrument involving the title to land. The evidence should be plain, direct and unequivocal, especially when both the actors in the case are dead. The burden is on the one setting up the trust or fraud if allowed to exist.

123 Maryland 44, Dixon vs. Dixon; 137 Maryland 266, Powers vs. Mackenzie.

There is no proof that an express or constructive trust was established at the time or that the property was

ever considered to be so held. Courts of equity will leave the parties where they have placed themselves, if their act seems to defraud others, unless it be to right the fraud that might injure third parties because there is nothing so much insisted on in seeking equitable relief as the doctrine that the one seeking equity must come in with clean hands, but even if this be not a proper defense, since it was not specially pleaded, it must be considered for the complainant's witnesses themselves have given that as about the only reason for placing the property in the name of Mrs. Robinson. The party seeking relief can have no standing when conveyance is made clearly to defraud, or if that be the plain effect. He has no right to get the benefit of what works a fraud upon other interested parties.

43 Maryland 513, Roman vs. Mali; 72 Maryland 489, Brown vs. Reilly; 111 N. E. 963, Pollack vs. Pollack.

Whilst this may be inconsistent with the other defenses set up in the answer, yet it can not be overlooked as a circumstance in the case, even though not set up in the pleadings as a defense or available standing along to defeat the action.

The question remaining to be discussed must be decisive of the matter. If the contention of the complainants prevail the property will be distributed to the heirs at law of the father (he having left no will). If the real defendants' view is adopted the property will pass under the will of the mother.

Courts of Equity must construe the act of the party (after full knowledge of the character and effect of the paper executed) by which all claim to have it set aside is abandoned with a reaffirmance of the paper.

It is not competent for a party to assail his own deed after an acquiescence for a number of years and after the decease of all of the actors in the transaction whose conduct is now impeached.

57 Maryland 537, Slingluff vs. Sewell. See Opinion of Judge Phelps in 76 Maryland 54, Whitridge case, and dissenting opinions of Judges Robinson and Bryan in the said case.

Long lapse of time if unexplained must raise a strong presumption of acquiescence and may be sufficient to induce a Court of Equity to refrain from interfering with a transaction to which all the original parties are dead, especially if party sought to be bound understood the act done.

No evidence but that Mr. William Robinson understood everything for thirty-five years. If ever laches should be invoked, it is a case of this kind. With this great lapse of time and no move to disturb the ownership as disclosed by the deeds and with every evidence of ownership by Mrs. Robinson, whether the property was acquired by her by gift, advancement or as the result of her own labors, she died seized and possessed of the property and as no good cause has been shown why it should be taken from her representatives, the bill will be dismissed.