LYDIA CROPPER *v.* JAMES E. LAMBERTSON ET AL.
[No. 13, January Term, 1938.]

*Decided March 8th, 1938.*

The cause was submitted on briefs to BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Godfrey Child, John L. Sanford, Jr.,* and *William G. Kerbin, Jr.,* for the appellant.

*L. Paul Ewell,* for the appellees.

SHEHAN, J., delivered the opinion of the Court.

Lydia Cropper, a colored woman, filed a bill of complaint in the Circuit Court for Worcester County against James E. Lambertson and Winfield Landing, in which she sought to have impressed upon a parcel of real estate, located in Pocomoke City, a resulting trust in her favor. She alleged that she had paid the entire purchase money for the property, and that James E. Lambertson had caused the deed for the property to be given to him and had refused to convey the property to her. She further charged that he was about to sell and convey the property to one Winfield Landing, without her consent; therefore, she prayed for an injunction against the appellees to restrain them from consummating this sale and from conveying the property. References herein to the appellee refers to James E. Lambertson, unless otherwise indicated.

The appellee alleges in his answer, and testified in support thereof, that he had paid out of his own money the entire purchase price of the land and had laid out other sums in relation to the property, for and on account of the appellant, and at her request, and that he was willing to convey the property to her, upon being reimbursed for the moneys he had advanced. It was adjudged by the decree that there was due, from the plaintiff to the defendant, the purchase money for the lot of ground, the sum of $800, with interest and other charges, together with a sum of money laid out on improvements, aggregating $1,259.97. The deed held by the defendant, Lambertson, was declared to create a lien, in the nature

of a mortgage, and the complainant was ordered to bring into court, to be paid to the defendant, this sum, together with costs of suit, upon the payment of which the defendant was ordered to convey the property to the complainant, and it was further ordered that, in default of such payment, the property should be sold, and a trustee for that purpose was appointed. From that decree this appeal was taken.

The single question in this case is whether the purchase money for the property was paid by the complainant, Lydia Cropper, or by the defendant, James E. Lambertson, out of his own funds and for and on her behalf.

The contract for the purchase of the property was made in 1924. On February 25th, 1928, the property was conveyed by Richard T. Leek, a minister, to James E. Lambertson, who caused the deed to be recorded. The plaintiff claims that she paid $100 to bind the bargain and on account of the purchase price, at the time the contract was made, and that, in a short time thereafter, an additional $150 was paid by her in cash to Leek, and that the balance was paid for her by Lambertson, as her agent, from funds paid to him, from time to time, with the exception of $120 which he advanced for her and for which he had been reimbursed. She also testified that the sums outlaid for improvements, insurance, and taxes were all paid by her to Lambertson, all of which is denied by the defendant, who, in some detail, testified how he, out of his own funds, had made all payments in full for the property, and the repairs and other charges. The testimony of the parties is directly contradictory and presents irreconcilable conflict on all essential facts and details, so that one or the other must be discredited in arriving at any conclusion herein.

There are but three witnesses to the important facts in this case; the appellant, the appellee, and Richard T. Leek, the grantor. The testimony of the other witnesses is of little value in arriving at a satisfactory disposition of this suit. There are, however, in evidence undisputed facts from which inferences are to be drawn, tend-

ing to confirm the plaintiff's contentions. It is established that she was an industrious colored woman, conducting her trade of hair dressing for colored people; that she had resided in various places where she engaged in business, and from this source earned money to pay for the property; and that, when the property was purchased in 1924, she received the key, moved into it, occupied it, without interruption, for more than thirteen years, paid no interest and no rent to Lambertson; and when she was informed that the property was about to be sold by him, she took immediate steps to prevent it and to protect her rights. During the thirteen years of her occupancy she was undisturbed and her rights were unquestioned. The property having been purchased by agreement in 1924, and the deed from Leek to Lambertson not having been given until 1928, a period of four years was afforded to her in which to follow her trade and to pay in installments her obligation, which, she testified, she did. The unquestioned facts and circumstances carry with them compelling inferences in her support.

In order to establish this resulting trust, the burden of proof rests upon her to establish by clear and convincing evidence that she paid the purchase money. *Dixon v. Dixon,* 123 Md. 44, 90 A. 846; *Hughes v. McDougall,* 142 Md. 1, 119 A. 691; *Witts v. Horney,* 59 Md. 584. In this case, as in all cases of this character, "the payment of the money is the foundation of the trust." *Dorsey v. Clarke,* 4 H. & J. 551, 557. The authorities all hold that the payment of the money must be clearly and definitely proven; otherwise titles depending on deeds and other written documents are rendered insecure.

The testimony of Lambertson that he paid all of the purchase money out of his own funds, and that Lydia Cropper had not reimbursed him, has no support or corroboration, but, on the contrary, he is contradicted by his own letters written to Richard T. Leek, as well as by Leek and the appellant, with regard to the settlement for the property. Lambertson testified that he paid all

the purchase money and made the first payment to Leek, in the sum of $200, at a different time and place from that stated by the appellant and by Leek. The person who would best know and could best corroborate the one or the other was Leek, the minister, from whom the property was purchased. His testimony directly, and without reservation, supports that of the appellant, both as to the amount of the installments directly paid to him, of $100 and $150, and also as to the time, place, and circumstances of these transactions. The balance of the money, according to the appellant and Leek, with the exception of $50, which, Leek testified, was paid to him by the appellant, was paid to him by Lambertson. She testified, however, that she gave to the appellee the money with which to pay the balance of the purchase price, and this has support in letters written by Lambertson to Leek. There were some other outlays made by Lambertson for insurance and taxes, and also for a substantial improvement to the property; but the appellant testifies that she reimbursed the appellee for every dollar that he paid for her. She states that there had been long and confidential business relations with him and that he had come to transact practically all of her business, and the testimony shows that, upon his insistence, the property was conveyed to him to be held for her.

James E. Lambertson was asked what reason, if any there was, for taking the deed from Richard T. Leek in his name. This, we think, was a proper question and should have been answered, but objection to it was sustained. In that ruling, we think, the chancellor erred. *Springer v. Springer*, 144 Md. 465, 125 A. 162; *Powell v. Mackenzie*, 137 Md. 266, 272, 112 A. 290.

The only direct testimony as to what occurred at the time he executed and delivered the deed, except that of the appellant, is that given by Leek. He stated, "Why, in 1928, I came to Pocomoke City, 518 Young Street, to meet Miss Lydia Cropper and Mr. Lambertson, to execute the deed. So, when we were about to execute the deed

I asked the question: 'Who do you want the deed made out to?' She said, 'To me.' I said, 'Well, you and Mr. Lambertson fix that up.' I said, 'Well, now, I am not going to fix it up unless you all agree.' Mr. Lambertson said, 'Lydia, let it be made out in my name; I will never give you any trouble; you can have your lifetime stay in there.' He said, 'I will never give you any trouble.' She said, 'All right.' So, we went down to Mr. Ewell's office and fixed the deed up in his name. That is why his name is on the deed." This is in direct support of the appellant's testimony.

The appellant testified that she demanded of Lambertson, several times, the conveyance to her of her property, but she was met with the statement, "Lydia, you are safe, what are you worrying about? Mr. Ewell told you you are safe; why are you worrying?" I said, "Well I would feel better if I had a deed myself because every now and then I get thinking—I get worried." He said, "You are certainly safe." These assurances apparently satisfied her from time to time. Later on, however, she ascertained that Lambertson was endeavoring to sell the property to Winfield Landing, one of the defendants, which is not denied, and she brought this suit to require him to convey the property to her and to enjoin him and Landing from consummating their transaction. The statement of the appellant as to what occurred at the time the deed was executed is substantially supported by Leek, as above set forth. The statement to her, that "You can have your lifetime stay in the property," might have been easily understood by an illiterate and unadvised colored woman as meaning the entire estate. She evidently did not understand the difference between a life and fee simple estate. Her subsequent action in demanding conveyance to her lends support to this conclusion.

We are convinced of the justice of the claim of the appellant by the inferences to be drawn from undisputed facts and the direct testimony of the appellant, supported by the witness, Leek, who corroborated her in every particular in which his connection with the transaction

would afford him knowledge of the facts and circumstances relating to the dealings between these parties. The further analysis of the testimony of Lambertson shows that he did not pay the purchase money in full and indicates that he paid none of it. In 1924, not long after the purchase of the property, Lambertson wrote Leek that, "in regard to the balance of the bill, the other $50.00, Lydia said she thought she could pay it." And Leek testified she did pay it. Again, on November 28th, 1926, Lambertson wrote, "I don't know how much she has saved up but she wants to pay $100.00 or more at the last of the year." From other testimony, it appears that this item was evidently paid by her. On September 2nd, 1926, Leek wrote Lydia Cropper thanking her for a prompt payment that she had made, and that he was sending a receipt for it to J. E. L. (presumably James E. Lambertson) for her. There was other correspondence and references to receipts showing that Lydia Cropper was paying either through Lambertson or directly to Leek, and, as late as January, 1927, Lambertson wrote to Leek inclosing a check and asking him to send a receipt and to draw it up as he had before, and "to address your letter to Mr. Marion P. Lambertson so that my wife would not be able to get it," all of which shows that, through Lambertson's own written statement, sums of money were being paid by the appellant and all of which refutes his testimony that he paid all of it.

Lambertson was notified to produce all checks and receipts showing payments but he failed to do this or to give satisfactory reasons for not doing so. Generally, it may be said, his testimony, especially on cross-examination, is inconclusive and has little probative force. There are situations unexplained or undenied by him that are entirely inconsistent with his claim. After testifying that Lydia Cropper went into possession of the house when it was purchased in 1924, the following testimony was given by him: "Q. Did she pay you rent? A. No, sir. Q. Has she paid you any interest? A. No, sir. Q. Has she paid you any money? A. No, sir. Q. You

mean to say that she has stayed there for fourteen years without paying you one cent rent, interest or anything? A. Yes, sir, that is what I mean to say. Q. Well, why did you let a woman, a colored woman, stay in one of your properties for fourteen years without paying any rent, taxes, insurance or anything else?"

To this question there was an objection, which was sustained. We think this was an important inquiry and a proper question, and one that the witness should have been compelled to answer, and that, in sustaining the objection, error was committed. *Quillen v. Bell,* 158 Md. 677, 149 A. 462; *Springer v. Springer, supra;* 39 *Cyc.* 154.

The issue here presented consists almost entirely of fact, and, while we are not unmindful that this court has so frequently said that great consideration should be given to the findings of the chancellor because, in having the parties and the witnesses before him, with an opportunity to observe their demeanor, conduct, and appearance, he is afforded a more favorable opportunity to judge of the credibility of their testimony than is possessed by this court from the testimony as it appears on the record; but there are errors in the rulings, as pointed out, and the testimony of Lambertson is, in itself, contradictory, is unsupported by corroboration, contradicted by Leek and the complainant, and the legitimate inferences drawn from admitted facts casts too much doubt upon the appellee's contentions; while the testimony of the appellant has direct corroboration on all the essential facts by a disinterested witness and by the letters of the appellee himself.

We are of the opinion that the relief prayed for by the appellant should have been granted, and, therefore, the decree will be reversed and the case remanded for a decree in conformity herewith.

> *Decree reversed, and case remanded for a decree in conformity with this opinion, with costs to the appellant.*