ELIZABETH C. LEUPOLD *v.* RICHARD J. LEUPOLD.

[No. 97, October Term, 1928.]

*Decided January 31st, 1929.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Burdette B. Webster,* with whom was *Charles F. Harley* on the brief, for the appellant.

*W. Irvine Cross and Redmond C. Stewart,* for the appellee.

URNER, J., delivered the opinion of the Court.

The bill of complaint in this case contains allegations to the effect that the plaintiff and his wife, the defendant, were

the owners of securities worth about $60,000 and real estate valued at $20,000 to $25,000, to the purchase of which they had both contributed, the securities being held by them jointly and the title to the real estate, a residence property, having been conveyed to them as tenants by the entireties; that in December, 1922, he yielded to her insistant demand that he transfer to her temporarily all of their joint investments, real and personal, and in April, 1923, while he was in a hospital, and when, because of her long-continued ill-treatment, he notified her that he would not live with her thereafter, she obtained from him the keys to their residence and safe-deposit box, upon her assurance that "she would make a fair and equal division of the securities and a fair and proper arrangement about the real estate"; and that the defendant has not kept her promise as to a division of their joint property, but now claims to own it absolutely. The relief sought is a decree requiring the defendant to transfer to the plaintiff one-half of the securities and a half interest in the real estate, and to account for the income received from the investments during the period of her sole possession. The defendant demurred to the bill, and from an order overruling the demurrer this appeal was entered.

For the purpose of testing the sufficiency of the bill of complaint, it was admitted by the demurrer that the defendant induced the plaintiff to place their joint property under her separate control temporarily, upon the faith of her promise to make a fair and equal division of it between them at a later but undesignated period. As thus tentatively conceded, the case involves the element of a constructive trust, and is therefore cognizable in a court of equity. *Springer v. Springer,* 144 Md. 465; *Jasinski v. Stanowski,* 145 Md. 58; *McIntyre v. Smith,* 154 Md. 660. In the first of the cases just cited, the opinion, delivered by Judge Offutt, quoted from 26 *R. C. L.* 1232, as follows: "Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it. They arise purely by construction of

equity, independently of any actual or presumed intention of the parties to create a trust, and are generally thrust on the trustee for the purpose of working out the remedy. The trusts are not what are known as technical trusts, and the ground of relief in such cases is, strictly speaking, fraud, and not trust. Equity declares the trust in order that it may lay its hand on the thing and wrest it from the possession of the wrongdoer. Constructive trusts may be divided into three' classes: first, trusts that arise from actual fraud; second, trusts that arise from constructive fraud; third, trusts that arise from some equitable principle independent of the existence of any fraud." This was followed by a quotation from the opinion by Judge Burke in *Coyne v. Supreme Conclave,* 106 Md. 54: "There is also a class of trusts which arise *ex malficio,* and equity in order to reach the possessor of what in conscience belongs to another turns him into a trustee." The opinion in the *Springer* case then proceeds: "The 'fraud' referred to in these definitions need not be actual but may be constructive, and one who acquires land or other property by fraud, misrepresentation, imposition, concealment, or under any other such circumstances as render it inequitable for him to retain it, is in equity regarded as the trustee of the party who suffers by reason of the fraud or other wrong and who is equitably entitled to the property. And a violation of a parol agreement to hold property in trust for another may, under certain circumstances, be sufficient evidence of fraud to raise a trust in favor of the promisee (39 *Cyc.* 178), and such an agreement may be inferred from the acts and conduct of the parties, as well as from their spoken words. *Mead v. Robertson,* 131 Mo. App. 185; *Crossman v. Keister,* 223 Ill. 69, 8 L. R. A. (N. S.) 707. As where a grantee, knowing from the statements and conduct of the grantor that the grant is upon trusts which the grantor believes he will carry out, accepts the grant under circumstances which to his knowledge justify such a belief. *Ibid,* 4 Ves. 10; *Suman v. Harvey,* 114 Md. 255, 256; *Ruhe v. Ruhe,* 113 Md. 601; *Clark v. Clark,* 139 Md. 42."

In *Jasinski v. Stankowski, supra,* a constructive trust was enforced against a person who had received the title to certain real estate upon the promise of the grantee, afterwards disavowed, to hold the property for the benefit of the grantor's children. It was said in the opinion: "Among the cases in which trusts are held to arise by construction of law are those where the conveyance of property is fraudulently procured by the grantee upon the faith of a parol trust agreement which is subsequently repudiated. Upon the just principle that the perpetrator of such a fraud will not be permitted to profit by his own wrong, the law creates a trust by implication for the protection of the rights which would otherwise be defeated. The principle is thus stated in 26 *R. C. L.* 1233, as follows: 'While the Statute of Frauds requires a writing to create an express trust in real property, it has no application to cases where the law raises a constructive trust by reason of the fraudulent acts and purposes in procuring title to the land. The rule is not allowed to operate as a protection for a fraud, or as a means of seducing the unwary into a false confidence, whereby their intentions are betrayed, and parol trusts in real estate have been frequently established in direct contradiction of the statute on the ground of fraud. Constructive trusts are held not within the statute because they rest in the end on the doctrine of estoppel, and the operation of an estoppel is never affected by the Statute of Frauds.' In 39 *Cyc.* 178, it is said: 'The mere violation of a parol promise made by the grantee to the grantor to hold land in trust or for a certain purpose, or to convey it to a person designated by the grantor, does not create a constructive trust in the grantee in the absence of fraud in procuring the conveyance; but such a trust will arise when, in addition to the breach of the parol agreement, there is some element of fraud or bad faith which makes it inequitable that the person committing the fraud or acting in bad faith should hold the legal title absolutely and discharge of any trust.' Numerous cases are cited in 26 *R. C. L.* and 39 *Cyc.* in support, respectively, of the statements we have quoted. * * * In the course of a full note in 39 *L. R. A.* (N. S.) 911, summarizing

cases which involve questions analogous to the one here presented, it is said: 'To avoid the injustice arising from the repudiation of a parol trust, courts of equity have frequently seized upon the slightest circumstances connected with the procurement of the conveyance to avoid the operation of the Statute of Frauds,' and 'Perhaps the most satisfactory inference of a fraudulent intent on the part of a grantee is to be derived from his activity in procuring the conveyance; and in the instances hereinafter detailed in which equity has compelled the performance of the promise, it will be found that the grantee made some representation, or otherwise took an active part in inducing the grantor to convey.' The cases to which the note makes that reference are: *Smith v. Smith,* 153 Ala. 504, 45 So. 168; *Fishbeck v. Gross,* 112 Ill. 208; *Williams v. Williams,* 180 Ill. 361, 54 N. E. 229; *Hansen v. Berthelson,* 19 Neb. 433, 27 N. W. 423; *Blount v. Carroway,* 67 N. C. 396; *Booth v. Turle,* L. R. 16 Eq. 183, 21 Week, Rep. 721; and *Catalini v. Catalini,* 124 Ind. 54, 19 Am. St. Rep. 73, 24 N. E. 375."

In *McIntyre v. Smith, supra,* it was held that the allegations of the bill of complaint indicated a bailment rather than a trust of the securities there involved, but the principles relating to constructive trusts were stated consistently with the decisions in *Springer v. Springer* and *Jasinski v. Stankowski.*

In this case the alleged activity of the defendant in procuring from the plaintiff the separate title to their joint property, upon the subsequently repudiated promise stated in the bill, would constitute, if proved to be true, a ground upon which a constructive trust could be declared and enforced.

The defenses of laches and limitations were interposed by the demurrer, because the transfers described in the bill of complaint were made, according to its allegations, about five years before it was filed. But it appears from the bill that the defendant was to retain the title to the property "temporarily". The time for the restoration of an equal share to the plaintiff was not specified. An immediate divi-

sion was apparently not intended. The grievance stated in the bill is not merely that the defendant unreasonably delayed the fulfillment of her promise, but that she "now" asserts complete ownership of the property. It was evidently a recent claim of unqualified title by the defendant to which the bill referred. A ground of action and redress thus originating in a newly declared attitude of the defendant was held by the lower court not to be subject to the defense of limitations or laches. In that view we concur, and we shall therefore affirm the order overruling the demurrer with leave to answer.

*Order affirmed, with costs, and case remanded for further proceedings.*