LENA C. McINNES ET AL. *v.* LINA McINNES.

[No. 12, October Term, 1932.]

*Decided November 16th, 1932.*

304

 

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Burdette B. Webster* and *Michael M. Doyle,* with whom was *Charles F. Harley* on the brief, for the appellants.

*Clarence A. Tucker,* with whom were *Knapp, Tucker & Thomas* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from the order of the Circuit Court of Baltimore City overruling the appellants' demurrer to the appellee's bill of complaint.

The causes of demurrer are want of equity in the bill and limitations and laches.

The bill alleges that a certain T. W. McInnes, a brother-in-law of the complainant, a then resident of Baltimore City, died about the year 1903; that, at the time of his death and for some years prior thereto, he conducted a laundry business in Baltimore City at 410-412 Ensor Street under the name of Old Town Laundry Company; that at the time of his death the complainant, together with her two sons, Thomas C. McInnes and Harry J. McInnes, resided in the city of New York; that, at the suggestion and upon the advice of her sons, the complainant sold her property in New York and she and her son Thomas C. McInnes purchased from his estate the laundry business formerly conducted by T. W. McInnes, deceased, which included 410 and 412 Ensor Street, the said sale being reported in the name of her son, the said Thomas C. McInnes; that the "complainant furnished practically all of the purchase money then payable in cash, being fifty per cent. of the entire purchase price, the deed for the properties being taken, for convenience, in the name of the said Thomas

C. McInnes, who was to have the active management of said business"; that, following the purchase, the complainant and sons moved to Baltimore, she and her son Thomas C. McInnes continuing the said laundry business under the name of the Old Town Laundry, the said Thomas having the active management thereof, the son Harry being employed, and the complainant helping from time to time with the office work; that at the time of the purchase of the plant and laundry business there were being used in connection therewith, as distributing centers, the properties, or portions of the same, known as 572½ and 574 North Gay Street and 216 South Broadway, the former being subject to an annual ground rent of $123 and the latter being in fee; that the said properties were being held by the estate of T. W. McInnes under leases from the owners, which said interest passed to the complainant and her son Thomas C. McInnes under and by virtue of the terms of the aforesaid purchase; that they continued to use said properties in connection with their laundry business, but within a few years thereafter the respective owners refused to renew the leases, and thereupon the complainant and her said son purchased the properties and paid for them out of the profits of the said laundry business, the price of the Gay Street property being approximately $3,500 and of the Broadway approximately $2,500, a total of $6,000, the deeds to both of said properties being taken, as in the case of the original properties, for convenience, in the name of the son Thomas C. McInnes; that after some years the complainant and said son found it necessary to enlarge the plant and equipment, and they accordingly bought the adjoining premises known as 414-416 Ensor Street, the complainant advancing the purchase money or the greater portion thereof, the title to 414-416 Ensor Street being also, for the same reason, taken in the name of the son; "that though the report of the sale for the laundry business aforesaid was in the name of the said Thomas C. McInnes, as were also the deeds to all of the properties hereinbefore mentioned, and though the said Thomas C. McInnes had active charge of said business, the said Thomas C. McInnes, having contributed but a very small

part of the capital invested therein, always regarded the equity of your complainant in said business as greater than his and not infrequently spoke of the said business as your complainant's business; that.the relationship existing between your complainant and her said son, as well as her relationship with all members of her immediate family and their relationship among themselves was always of the closest and most confidential nature and though your complainant, by reason of that fact, was quite satisfied to have the title to all of the aforesaid properties belonging to the business to stand in the name of the said Thomas C. McInnes, the active head thereof, nevertheless, the said Thomas C. McInnes realizing that the equity of your complainant was greater than his, and desiring to more fully protect the rights of your complainant against possible contingencies, did on the 2nd day of August, 1909, by deed duly executed and recorded convey the aforesid properties 414-16 Ensor Street to and unto your complainant; that thereafter and in furtherance of said desire to protect more fully the rights of your complainant as aforesaid, the said Thomas C. McInnes did on the 12th day of May, 1911, by deed duly executed and recorded, convey also the properties 410-412 Ensor Street, being the properties originally purchased by them as aforesaid, together with certain boilers, machines, etc., therein contained, to and unto your complainant"; that in February, 1913, Thomas C. McInnes, with the sanction and consent of your complainant, sold to the United Laundries, Incorporated, the laundry business conducted by them, including the Ensor Street properties and the plant located therein, but not the Gay Street and Broadway properties, the complainant executing a proper deed therefor, specifically conveying all her right, title, and interest at law or in equity therein to the purchaser; that the sale of said plant, property and business resulted in your complainant and her son Thomas C. McInnes receiving approximately the sum of $25,000 in cash, and they retained the Gay Street and Broadway properties, worth at that time about $9,000 or $10,000; that shortly after the consummation of said sale the said Thomas C.

McInnes desired to go into the laundry business in the City of Washington, D. C., and needed about $17,000 for that purpose; that the son Harry, having lost his employment as a result of the sale of the business in Baltimore, desired money to enter into the laundry business in that city for himself; "that your complainant and her said son Thomas C. McInnes therefore agreed that out of the cash ultimately realized from said sale of the aforesaid properties, plant and business, to United Laundries, Incorporated, the said Thomas C. McInnes should take approximately $17,000 needed by him to go in business in Washington as aforesaid, and that your complainant should have the remaining $8,000 of the cash proceeds of the sale and the Gay Street and Broadway properties; that the division agreed upon and made in this manner enabled the said Thomas C. McInnes to enter into the laundry business as aforesaid in Washington, D. C., as desired by him and also put your complainant in the position, if she so desired, to advance to her other son Harry J. McInnes sufficient funds to enable him to open a laundry business in Baltimore City, Maryland, as aforesaid; that while it was definitely and distinctly understood between your complainant and the said Thomas C. McInnes that the aforesaid Gay Street and Broadway properties were to be hers, nevertheless the title was left standing as theretofore, in the name of Thomas C. McInnes"; that, after the sale of the business and the division of the proceeds as recited, Thomas C. McInnes took the $17,000 agreed to be his and engaged in the laundry business in Washington, D. C., and the complainant advanced the remaining $8,000 in cash to her son Harry, who established a laundry business in Baltimore City on Twenty-First Street, and thereafter the complainant, who was then and ever since has been in full possession of the Gay Street and Broadway properties, allowed her son Harry to use a portion of said properties for distributing points, the remainder of said properties being leased to tenants; that, after the said division between the complainant and Thomas C. McInnes, he never had anything to do with, or claimed any interest in, the Gay Street and Broadway properties, nor

in the laundry business in Baltimore City conducted by his brother Harry; that after he went to Washington he never asked for and was never given an accounting in respect to the Gay Street and Broadway properties, but, on the contrary, the son Harry J. McInnes, on behalf of the complainant, took full charge of those properties, paid the ground rent, water rents, taxes, and all expenses incident to the maintenance of both properties, and collected whatever rents were available therefrom; that Thomas C. McInnes, after the division between the complainant and himself and his going to Washington, stated on numerous occasions, during his lifetime, to different persons, that, while the title to the Gay Street and Broadway properties might still be in his name, he had no interest in them and had nothing to do with them, that they were owned by the complainant, and always referred any inquiry respecting them to the complainant or to her son Harry, who was managing them for her; that the said Thomas C. McInnes died suddenly on or about October 16th, 1929, in the City of Washington, without ever having conveyed the legal title to the said Gay Street and Broadway properties to the complainant, and leaving a last will and testament, wherein, after making some pecuniary legacies, he gave all the rest, residue, and remainder of his property, real, personal and mixed to his wife, Lena C. McInnes, one of the defendants, and appointed Michael M. Doyle his executor, the other defendant, which last will has been duly admitted to probate in Washington, D. C., a certified copy being filed as an exhibit with the bill of complaint; that the complainant is the equitable and real owner of the aforesaid property 572½ and 574 North Gay Street and 216 South Broadway, and she is advised that the naked legal titles thereto now stand as to the properties 572½ and 574 North Gay Street, same being leasehold, in the defendant Michael M. Doyle as the executor under the will of Thomas C. McInnes, he having qualified as such, and as to 216 South Broadway in the defendant Lena C. McInnes, the residuary devisee named in the will, and that the complainant is en-

titled to have conveyed to her the legal title to said properties and to have a trustee appointed by the court for that purpose.

The prayers of the bill are:

(a) That the court pass a decree, declaring that she is the equitable and real owner of the properties known as 572½ and 574 North Gay Street and 216 South Broadway and entitled to a conveyance of the legal titles thereto.

(b) That a trustee be appointed to execute and deliver a proper deed to said properties to the complainant.

(c) For general relief.

In passing upon the validity of the bill of complaint, when challenged by demurrer, the court is required to regard the well-pleaded allegations of fact as being true, and with such assumption determine the complainant's right to relief in equity. When thus tested, we are of the opinion that the allegations set forth a case wherein equity has jurisdiction, and, if admitted or when proven, entitles the complainant to relief as prayed. We have set out at some length the allegations of the bill, and find them amply sufficient to constitute a constructive trust in favor of the complainant in respect to the North Gay Street and South Broadway properties, the title to which are here in controversy. Whatever money was paid at the time of purchase in acquisition of the property from the estate of T. W. McInnes was furnished by the mother, while the purchase price of all after-acquired property was paid by her, or out of the profits of the business, of which the son Thomas C. McInnes was the active managing head. For convenience, the deeds to all of the property were to the son, thereby placing the legal and record title in him, the properties, for which the son had deeds, being 410, 412, 414 and 416 Ensor Street, 572½ and 574 North Gay Street, and 216 South Broadway. Subsequently, during the years 1909 and 1911, the son by deeds conveyed all of the Ensor Street property to his mother, this being the property in and upon which the laundry plant and machinery was located. Later in the fall of 1913 the son, with the consent and approval of the mother, sold the laundry business in Baltimore to the United Laundries, Incorporated,

for the sum of $25,000. This sale did not include the Gay Street and Broadway properties, but did include the Ensor Street property, for which latter the mother executed a proper deed conveying same to the purchaser. When this transaction was completed, the combined assets of the mother and son, derived from or growing out of the ownership and conduct of the laundry business in Baltimore City known as the Old Town Laundry Company, were $25,000 in cash and the Gay Street and Broadway properties, title to which was in the son, and which were then worth about nine or ten thousand dollars. At that time the son desired to engage in the laundry business in Washington, D. C., and needed for that purpose $17,000. It was therefore agreed by and between the mother and son that the son should have and take the said sum of $17,000 in cash, and the mother should take the remaining $8,000 in cash, and should have the Gay Street and Broadway properties of the then value of about $9,000. Pursuant to this agreement, the son received the $17,000 in cash and moved to the District of Columbia, while the mother received the balance of the cash, being $8,000, and took possession and control of the Gay Street and Broadway properties, although the son did not give her a deed for the same. This agreement was, as stated, in 1913, from which time the mother has had possession of the property in question, paying the ground rent, taxes, water rent, and all other expenses incident to the maintenance and upkeep of the property, and collected whatever rents were available therefrom. From the time of the division between Thomas C. McInnes and his mother to the time of his death, a period of sixteen years, he never demanded or requested an accounting in respect to the property, nor was any ever furnished him, but the mother occupied, controlled, and used it, as her absolute property. In addition, during all of these years, whenever inquiry in regard to the property was made of the son Thomas C. McInnes, he stated on numerous occasions and to different persons that, while the title was still in his name, he had no interest in them, that they were owned by his mother, and

referred such inquiries to the complainant or to his brother Harry J. McInnes, who was managing them for her.

While there may be some doubt as to the legal status of the mother and son in respect to the property in question before the sale of the laundry business in Baltimore City made by them in 1913, there can be no doubt that from that time on, in consequence of the agreement then made, the mother became the equitable owner of the Gay Street and Broadway properties and the son held the legal title thereto as trustee for her, she having given the son $17,000 of the $25,000 received from the sale of Ensor Street houses, title to which were then in her, upon the express agreement that the property now in controversy was to be hers absolutely. We are not called upon to decide what the respective interests of the mother and son were prior to the sale in 1913, because at that time they made division in accordance with their voluntary wishes and as they thought best. This division was approximately an equal one, and was apparently fair and equitable, in consequence of the capital furnished and services rendered by each of the parties.

Our conclusion that upon the allegations of the bill of complaint the son, at the time of his death, held the legal title of the property in question as trustee for the mother is fully supported by former decisions of this court. In *Byer v. Szandrowski*, 160 Md. 212, 153 A. 49, 52, we quoted with approval from *Perry on Trusts* (7th Ed.), sec. 168, as follows: "Constructive trusts may be divided into three classes, to be determined according to the circumstances under which they arise. First, trusts that arise from actual fraud practiced by one man upon another. Second, trusts that arise from constructive fraud. Third, trusts that arise from some equitable principle independent of the existence of any fraud." See, also, *Springer v. Springer*, 144 Md. 465, 125 A. 162; *Jasinski v. Stankowski*, 145 Md. 58, 125 A. 684; *McIntyre v. Smith*, 154 Md. 660, 141 A. 405; *Dillfelder v. Winterling*, 150 Md. 626, 133 A. 825; *Leupold v. Leupold*, 156 Md. 516, 144 A. 647; *Byer v. Szandrowski, supra*.

We do not wish to be understood as finding fraud either actual or constructive on the part of the son, Thomas C. McInnes; on the contrary, the record discloses the closest and most devoted relationship between the members of the McInnes family, as evidenced by the encouragement and financial help rendered by the mother and the highest filial devotion given by the son; this relationship being the very likely cause of the son's failure to convey the record title of the property to his mother before his sudden and unexpected death. Neither do we think that the defense of laches is available under the circumstances of this case. No definition of laches can be given which is applicable in every case, and no attempt should be made to formulate an inflexible rule to govern in all cases. This court has in general terms defined laches as such a neglect or omission to assert a right as, taken in conjunction with lapse of time, more or less great, and other circumstances, to cause prejudice to an adverse party. *Hopper v. Brodie,* 134 Md. 290, 106 A. 700; *Kaliopulus v. Lumm,* 155 Md. 30, 141 A. 440; *Demuth v. Old Town Bank,* 85 Md. 315, 37 A. 266, 269. In the last-mentioned case it is said: "Obviously, then, there must be a legal duty to do some act, a failure to do that duty, and attendant circumstances which cause prejudice to an adverse party, before the doctrine can be successfully invoked. Mere lapse of time without more, unless of sufficient duration to amount to and constitute * * * limitations, will not be sufficient." Limitations in this case could not begin to run until 1913, at which time Thomas C. McInnes began to hold the legal title to the property as trustee for his mother. If limitations in such a case be twenty years, which we do not here decide, the bill, being filed February 25th, 1931, was well within the time allowed. Under the circumstances of this case, the mother was under no obligation to demand a conveyance of the legal title; their relationship, as stated, was of the closest and most confidential nature; the mother was in full possession and enjoyment of the property, with knowledge and complete acquiescence by the son. The rights of no stranger have intervened, because those who now resist

the mother's contention take under and by virtue of the son's will, and stand in his shoes, in respect to the ownership of the property. Again, there is nothing in the will to indicate that he claimed the property. After making two pecuniary bequests, one to his mother and another to his sister, all the rest and residue of his property of every description, without naming it, was devised and bequeathed to his wife. It is true that no demand for a conveyance of the property was made until after the son's sudden death. Delay until after the death of the other party concerned is said to be suspicious, and may be considered along with other circumstances to make out the defense of laches, but we have been referred to no case which holds that mere lapse of time plus the death of the other party to the transaction is sufficient to constitute laches under the circumstances disclosed by this record.

*Order affirmed, with costs, and cause remanded for further proceedings.*