## CHARLES A. PORTER *v.* ELSIE M. PORTER
[No. 4, January Term, 1935.]

*Decided March 6th, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Simon E. Sobeloff,* with whom were *George Henderson, Elmer J. Carter,* and *Wm. Taft Feldman* on the brief, for the appellant.

*Charles Z. Heskett,* with whom was *David A. Robb* on the brief, for the appellee.

SHEHAN, J., delivered the opinion of the Court.

On September 26th, 1933, Charles A. Porter, the appellant, filed a bill of complaint in the Circuit Court for Allegany County against his wife, Elsie M. Porter. The purpose of the bill was to have a resulting trust imposed upon certain real property located on Shriver Avenue in the City of Cumberland, in favor of the appellant. The fee simple title to this property had been conveyed to Elsie M. Porter, the appellee, by a deed from Annie M. White and husband, dated July 30th, 1926, and duly recorded among the Land Records of Allegany County.

The bill of complaint, in substance, after formal allegations, states that, after some discussion "as to whose name should appear on said deed as grantee," it was decided that the defendant Elsie M. Porter should be named as grantee therein, but the same to be the joint

property of the parties to this suit, and that at the death of either it was to belong to the survivor, and in accordance with this agreement the deed was executed. It is further alleged in the bill that on the 4th day of August, 1933, reciprocal wills were made, under which the entire property of each of the parties was given, devised, and bequeathed to the other, in furtherance of the plan or agreement; that these wills were kept in the office of Mr. William H. Cole, deceased, an attorney at law. After the death of Mr. Cole the wills were placed in a safe deposit box in the First National Bank of Cumberland. The appellant further alleges that the will of the defendant, without the knowledge of her husband, was removed from the safe deposit box on September 5th, 1933, "and believes and so avers that she has since fraudulently destroyed or concealed it for the purpose of defeating the agreement between them."

The bill then alleges that the appellant paid the entire purchase price out of his own moneys, believing that he would have the enjoyment of said real estate as a home during his lifetime, and that, if his wife should predecease him, he would immediately, by virtue of her will, become the owner of said real estate in fee simple.

The complainant then alleges that it was never his intention, in placing the title in his wife, that it be considered as a gift or advancement by him to his wife, and that, if said will of his wife had not been promptly executed, after said deed had been executed, he would immediately have applied for proper relief. It is then stated that the plaintiff prepared and sought to have executed a deed by Mrs. Porter to carry out the transaction, but she refused to do this, and claims the real estate as her individual property, and that the same was received by her as a gift from her husband.

There are other averments in the bill, mostly intended to give color and support to the more important allegations. It was prayed in the bill that the court declare "the title to said real estate is held in trust for the benefit of your Orator under the agreement aforesaid"; and (2)

that the court pass an order appointing a trustee to transfer the legal title to said real estate; and (3) for further relief.

The defendant filed her answer denying all the essential allegations of the bill, and claiming "that said property is her own absolute property, received as a gift from her husband," and denying that she holds this property in trust, and charging that, if the plaintiff can no longer enjoy the property as his home, it is solely because of his own misconduct. She specifically denied that she had destroyed or secreted her said will, as charged in the bill.

The answer alleges that her husband had treated her with harshness and cruel brutalities, which culminated in his desertion of her in September, 1933. That, when she returned from a combined vacation and journey for medical treatment of their child, she found their home stripped of many of their household possessions, and that her husband had also removed therefrom practically all of his clothing. That prior to this he had repeatedly told her that he intended to get rid of her. It was then, and only then, that she decided to seek relief in this court, by divorce *a mensa et thoro,* and such other relief as she was entitled to have.

The parties to this suit were married on May 3rd, 1923, and it will be observed that this property was purchased approximately three years thereafter, on July 30th, 1926, and stood in Mrs. Porter's name without question or interference until September 26th, 1933, a period of about seven years. By 1933 the married life of these people had fallen into a deplorable situation, and in September, 1933, Mrs. Porter had brought a proceeding in the court of equity in Allegany County asking for the protection of herself, her child, and her property, and for a divorce *a mensa et thoro* from her husband on the ground of cruelty, and praying for the guardianship of her child, for alimony, for the restoration of certain furnishings which he had removed from the house, and that Mr. Porter be restrained from going to her home

or interfering with her or her child. On September 14th, 1933, the chancellor passed an order granting the preliminary relief prayed. Such, in general, was the situation when the appellant's bill of complaint was filed in this case. It may be that this condition of affairs prompted Mr. Porter in bringing this suit, rather than the alleged agreement. Certainly this can be asserted with some force, because the suit never seems to have been contemplated until the difficulties referred to arose in his family.

As to the testimony, it was agreed between the parties, with the consent of the chancellor, that the Court of Appeals of Maryland may use and consider, as a part of the evidence in this case, the testimony in the case of *Elsie M. Porter v. Charles A. Porter*, being No. 12880 Equity, in the Circuit Court for Allegany County, Md., which is now on appeal in this court. (See post p. 296).

From the testimony it is clear that the appellant was actuated by two considerations in having the property conveyed to his wife: First. To free it from any possible claim that might be made by a daughter by a former wife, who had divorced him and obtained a substantial settlement or payment of money from him. Second. Out of love and affection for his wife, and to better and more certainly provide a home for his wife and their then unborn child, and as a future home for all of them. These were his aims and purposes, and to accomplish them he formulated a definite plan, not contemplating or comprehending such a trust, for, had a trust been designed or intended, he would not have given or so placed the property in such a manner, or in such an estate, as to enable her, if she chose, to defeat those purposes he desired, especially when acting under the guidance and direction of competent counsel.

Further, to indisputably sustain this contention, so definite was his purpose and fixed plan that he speaks of it in the bill as an agreement, and alleges in his bill that the destruction of her will, which he then averred to have occurred, would amount to a fraud upon him,

and a secret violation of the agreement and arrangement between them. The agreement reposed in Mrs. Porter a title in fee simple, with reciprocal wills made in favor of each other, as to all of their respective properties. This plan is further supported or substantiated by the testimony of Miss Barnhill.

Whether the plan of conveying the property to Mrs. Porter by Mrs. White and her husband in fee simple, with these reciprocal wills, was the best, or even a wise, plan, it is not for us to say. It was Mr. Porter's plan, because he was certainly the dominating person in the whole transaction. Mrs. Porter joined in it, thinking the property was being given to her, and from all the circumstances, especially from her conversation with Mr. Cole, as set forth by Miss Barnhill, she was justified in so believing. Miss Barnhill's testimony was as follows:

"Q. What, if anything, did Mr. Cole tell Mrs. Porter about the execution of the deed? A. He told Mrs. Porter, in order that she should be protected and Mr. Porter should be protected, that the property should be put in Mrs. Porter's name and Mrs. Porter should make a will leaving everything to Mr. Porter, and Mr. Porter should make a will leaving everything to Mrs. Porter, which Mrs. Porter agreed to there before it was settled. Q. Were those wills ever drawn? A. There were two wills drawn. Court: Are the two wills in evidence? Mr. Carter: The two wills have been offered in evidence. Is it admitted that the two wills in evidence are the two wills drawn at that time?"

Mr. Cole was Mr. Porter's attorney. He had taken Mrs. Porter to him in regard to this matter, and she had a right to rely upon his statements to her, as testified by Miss Barnhill.

Thus it will be observed, as to the alleged fraudulent destruction by Mrs. Porter of her will, for the purpose of defeating the agreement, as charged in the bill, that the effect of this important allegation is destroyed by evidence as to the revocation of Mr. Porter's own will, which, as developed by a question of the court, was as

follows: "Mr. Porter, Is that will you have offered in evidence a subsisting will at this time or has it been revoked by another will?" Mr. Porter: "It was revoked about four weeks ago."

This creates a remarkable situation. The bill had been filed on September 26th, 1933. About four weeks before his testimony was taken, which occurred on March 13th, 1934, and long after the answer had been filed (October 17th, 1933) in which Mrs. Porter states that she has not destroyed or canceled the will, and that the will is in existence, Mr. Porter states, in answer to the court's question, that his will had been revoked about four weeks ago, that is, four weeks before March 13th, 1934.

It seems that he has done what he accused Mrs. Porter of fraudulently doing. He also offered in evidence a will which had been previously revoked by him, without apprising or explaining to the court his revocation of this will.

In the case of *Powell v. Mackenzie*, 137 Maryland 266, 112 A. 290, 293, a case having many characteristics of this case and brought for the purpose of establishing a resulting trust, it was stated that: "The fact that the appellee first made a will devising all her property to her husband, and in the event of his death to go first to her children, and only in the event of her death without issue to the children of his first marriage, and that she made a second will in which the property was left in trust for the use of her husband during his lifetime and for the use of such of his children as should then be living and the issue of any deceased child * * * was not *per se* an admission on her part that she did not hold the absolute title to the property which she undertook to devise by it, but may just as well have been considered an assertion on her part that she owned the property absolutely, and was therefore empowered to dispose of it by will. There was no recital or statement in either will specifically referring to the property involved in this controversy, or recognizing any obligation on her part to dispose of it in any particular manner, or warranting the in-

ference that what she did was not done voluntarily by her. These wills are without any intrinsic probative force to prove a resulting trust, and derive none from any relation to or connection with any other fact in the case." Throughout that case the facts, and the application of the law, as laid down, are useful in determining the instant case.

Mr. Porter's action in sending to his wife, when she was at Ocean City, a deed which he requested her to execute and return to him, without explaining its purport, was in furtherance of his plan to alter the situation with regard to the title to the property, at a time when he was planning or had actually taken steps to make changes in his household arrangements. He sent this deed to Mrs. Porter, without first having consulted her and explaining fully to her its purport and effect. Only a short letter, containing no explanation of his design, or its effect upon her property rights, was sent to her with the deed. He made no claim that the execution of this deed would be a fulfilment of the arrangement or agreement made at the time the property was conveyed to her in fee simple. Here again is evidence that the conditions and differences that had arisen in his family affairs, seven years after the conveyance of the property to her, rather than a definite understanding and agreement before, or at the time of, the conveyance of the property to her, impelled him to endeavor to impose a resulting trust on this property, beneficial to himself.

A resulting trust can only be predicated upon facts and circumstances prior to or at the time of the conveyance. This court has said: "Subsequent acts or declarations of the purchaser, or any other matter arising *ex post facto*, cannot be admitted for the purpose, although they be of the most unequivocal and conclusive description." *Johnson v. Johnson,* 96 Md. 144, 148, 53 A. 792, 794.

Unless there are special and controlling circumstances to the contrary, a conveyance made to the purchaser's wife raises a stronger presumption of a gift or advance-

ment that one made to any other person, even though to one's own child. *Mutual Fire Ins. Co. v. Deale,* 18 Md. 26. This presumption, the strongest in such cases, in effect means that clearer and more conclusive evidence is required to convert a fee simple title to a wife into a resulting trust in favor of her husband than in any other such cases.

The case of *Dixon v. Dixon,* 123 Md. 44, 55, 90 A. 846, 850, and the cases therein cited, have established the general principles that govern this case: "If the person in whose name the conveyance of property is taken be one for whom the party paying the purchase money is under a natural or moral obligation to provide, no equitable presumption of trust arises from the fact of the payment of the money; but, on the contrary, the transaction will be regarded, *prima facie,* as an advancement for the benefit of the nominee. In that case, therefore, it will be for the party who seeks to establish a trust in behalf of the payer of the purchase money to displace, by sufficient evidence, the presumption that exists in favor of the legal title." See *Johnson v. Johnson,* 96 Md. 144, 148, 53 A. 792; *Springer v. Springer,* 144 Md. 465, 479, 125 A. 162; *Vogel v. Vogel,* 157 Md. 147, 154, 145 A. 370.

The evidence in this case does not measure up to that standard of strength. There is too much doubt and too many intervening circumstances that tend to take away the convincing and conclusive character of this testimony that is required in such cases as this to rebut the strong presumption that the law creates in favor of the legal title, as evidenced by the deed, and especially in favor of the legal title where the property has been conveyed to a wife, and, in view of the legal requirements previously stated, it is our opinion that the title to this property, as it now exists, should not be disturbed, and that the decree of the chancellor be affirmed, with costs to the appellee in this court and in the court below.

*Decree affirmed, with costs to the appellee in this court and the court below.*