## NATHANIEL MOUNTFORD *v.* DONNA M. MOUNTFORD

[No. 53, October Term, 1942.]

*Decided December 7, 1942.*

The cause was argued before SLOAN, JOHNSON, DELA-PLAINE, COLLINS, MARBURY, and GRASON, JJ.

*Eldridge Hood Young* for the appellant.

*Joseph T. Sherier,* with whom were *Robert Peter* and *J. Allan Sherier* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

The appellant, Nathaniel Mountford, filed a bill of complaint in the Circuit Court for Montgomery County against his wife, Donna M. Mountford, appellee. He prayed that the very expensive and luxurious home of the parties, located on Connecticut Avenue in Chevy Chase, Maryland; the real estate known as the Rittenhouse Street property, located in the City of Washington; all of which he had had titled in the name of his wife; and securities, stocks, bonds and other personal property and cash, of the value of $60,000, which he had acquired and put in the possession of his wife and which he claimed the wife was wasting and dissipating; and the very expensive furniture in the home at Chevy Chase; all be decreed to be the joint property of the appellant and the appellee during life, and upon the death of either, to pass to the survivor. He alleged that

all these properties, except the furniture, were put in her name and possession "with the distinct understanding and agreement that, while the legal title or possession of the said property was in her alone, it was understood between them that both of the parties hereto were the owners thereof, as well as any increase or yield therefrom, and that the same would be held by the defendant for herself and your Orator for their declining years and to belong to the survivor of them"; that the aforesaid properties and securities were to be held by the appellee in trust for the appellant and the appellee. He also prayed for discovery, for an injunction, for a receiver and for general relief. Upon the dismissal of his bill of complaint by decree, after answer filed by his wife denying the material allegations of the bill and after the taking of testimony, he appeals to this court.

At the time the bill in the instant case was filed, there was a divorce suit pending, filed by the wife against her husband, and in that case the wife, appellee here, prior to the decree in the instant case, obtained a divorce from the appellant here on the grounds of adultery, which was affirmed by this court, April Term, 1941, 179 Md. 697, 19 A. 2d 178.

In the bill of complaint there is no allegation that the delivery to the wife at the inception of the transaction was induced by fraud or that the delivery at the inception of the transaction was induced by the wife by reason of the confidential relationship between the parties, nor is there in the testimony evidence to sustain such an allegation, and therefore no constructive trust is established. *McIntyre v. Smith,* 154 Md. 660, 141 A. 405; *McInnes v. McInnes,* 163 Md. 303, 163 A. 85; *Leupold v. Leupold,* 156 Md. 516, 144 A. 647; *Lipp v. Lipp,* 158 Md. 207, 148 A. 531.

The question therefore before us is whether the testimony in this case establishes a valid resulting trust in favor of the wife, and husband, including the properties in dispute.

The appellant shows that the parties were married in New Jersey in 1898 and removed to Washington, D. C., the following year, where he obtained a position as a window dresser. After working for five or six years, he saved money and purchased a small millinery business for $500. He continued his employment as a window dresser, and his wife conducted the millinery business with his help. He later resigned his position and devoted all his attention to the millinery business with his wife. Numerous other millinery stores were bought by the parties, the leases being in his name, and they were very successful in their business. The profits from the businesses were made by them jointly and were used to purchase the properties now in dispute. They lived and worked happily together until the year 1935, when it was necessary for the wife to have a serious operation. After she returned from the hospital, the doctor advised that she not return to the store. At that time the husband apparently became infatuated with one of the women employees in the store, which resulted in the divorce. Trouble began between the parties to this suit soon after she returned from the hospital in 1935.

The daughter of the parties, Mrs. Donna M. Powell, a resident of the State of North Carolina, testified that it was distinctly understood between her father and mother that the properties were both of theirs to use and that they would go to whomever lived the longest, to use jointly as long as they both lived. This, however, was a general conclusion on her part. She could not recite the general wording of such an agreement. Her husband, Douglas A. Powell, testified that, while he couldn't say there was any definite understanding about it, the properties were put in trust, although they were in her name, and that they were to use them joinly. He could not, however, fix the time, place, terms, or general wording of such an agreement. "When the plaintiff relies upon mere parol evidence to establish the trust, the 'court should view with the greatest caution such evi-

dence impeaching, as it does, solemn instruments, the evidence of title to land * * *.' While general reputation as to the ownership of the property in dispute, under the facts and circumstances of the case, might be admissible as reflecting upon the question of laches, it cannot be received to prove title to the land, or to establish the trust asserted by the bill." *Dixon v. Dixon*, 123 Md. 44, 48, 59, 90 A. 846, 851. The evidence used for the purpose of displacing the title of the holder, unless founded on her own admission or declarations of trust, must be contemporaneous with the purchase. Subsequent acts or declarations of the purchaser, although most unequivocal and conclusive, cannot be admitted for the purpose. *Mutual Insurance Co. v. Deale*, 18 Md. 26, 79 *Am. Dec.* 673; *Johnson v. Johnson*, 96 Md. 144, 148, 53 A. 792; *Porter v. Porter*, 168 Md. 287, 177 A. 460. It is not what the husband, alone, intended. The intention must be mutual and the agreement must be that of both parties.

The appellant's testimony was, in effect, that the Hesketh Street lot, the first bought by them, was obtained "in her name with the distinct understanding that both of us would live and carry out our agreement all our days, and when either one died, it would make no difference, it would go to the other." He said that he never gave this house and lot to her. He said: "I told her I would have put it in her name for both of us as long as we lived and whoever survived would take it over." This lot was later sold and the money reinvested. In reference to the Connecticut Avenue property, he testified that he had the same agreement in reference to that place as about the first one and that he told her that "this house was going to be put in your name and I am going right along and put it right in your name just as all the time—just as I did all the time." He spoke to a Mr. Stunts, a bank official, about putting the property in his wife's name. He testified further: "I told Mrs. Mountford that Mr. Stunts advised me that it was all

right that way, but that we would never know what happened the way we have it now if anything happened to you." He further testified in reference to the Connecticut Avenue proeprty: "I told her I had put it in her name just the same as we had done with other property. We agreed and said, 'It makes no difference which one of us it was. What is yours is mine anyhow'." "It was built for both of us." He further claimed that he did not give her the property. In reference to the furniture, he said, "In fact, both of us always agreed what was one's was the other's." "Everything had to go to the other." He said he never gave the furniture to his wife. He testified that: "I always had a great belief in heredity and all my people died very young. Mrs. Mountford was very well at the time. I never had any insurance and no protection. The first thing I did was to get that lot in her name with the distinct understanding that both would live and carry out our agreement all our days and when either one died, it made no diference, it would go to the other." He said the savings accounts were opened in the name of the appellee to keep them separate from the commercial account belonging to both of the parties and used by both of them. In reference to the securities, the possession of which he turned over to his wife, according to the allegations of the bill, he testified: "I did not carry any large insurance. So when we started purchasing real estate notes, I didn't buy any insurance because I could buy these notes and make 6 per cent, and both of us would enjoy the interest of these notes as long as we lived, in case either one would die, the notes were in bank and the first thing to do would be to go to the bank and endorse them. If anything happened, it would save the cost of court litigation." He testified that Mrs. Mountford agreed to this and the notes were put in a safe deposit box, rented in the names of Donna May or Nathaniel Mountford. In reference to the property acquired by foreclosure of a mortgage in his wife's name, he said he told the attorney to fore-

close the mortgage and put the property in Mrs. Mountford's name so as to keep it separate from the business. This is the testimony offered by the husband to convert a fee simple property of the wife into a resulting trust in favor of the wife and husband and to overcome the strong presumption in favor of the legal title. In considering this question, this court cannot consider the effect of the decision of the case upon the fortunes of the parties, nor can we consider the physical and mental condition or the fiscal necessities of the parties. We are confined to a consideration of the testimony in the case, and the application of that testimony to the principles of law involved. *Powell v. Mackenzie,* 137 Md. 266, 270, 112 A. 290. We can only apply that law to the facts created by the parties in the instant case.

The principle of law involved in this case has been frequently before this court and is well expressed by Judge Burke in the case of *Dixon v. Dixon, supra,* 123 Md. at pages 55 and 57, 90 A. at page 850, as follows: "The general rule is well settled that, when the purchase price is paid by some one person, and the title is taken in the name of another, a resulting trust arises in favor of the person paying the purchase money, and the holder of the legal title becomes a trustee for him. There are, however, exceptions to this general rule: Thus, where a person purchases land and pays the consideration with his own money, but causes the title to be placed in the name of one to whom the purchaser is under a natural or moral obligation to provide, such as in the case of parent and child, or husband and wife, no presumption of a resulting trust will arise; but will be regarded *prima facie* as a gift or an advancement for the benefit of the nominal purchaser. In either case, the presumption is one of fact, and not of law, and the real intention of the parties to the transaction may be shown, and the court will give it effect, if it does not contravene some rule of property or the policy of the law * * *. 'Indeed, the presumption is stronger in the case of a

wife than of a child, for she cannot at law be the trustee of her husband'." *Mutual Insurance Co. v. Deale, supra,* 18 Md. 46, 79 *Am. Dec.* 673; *Powell v. Mackenzie, supra,* 137 Md. 271, 112 A. 290; *Porter v. Porter, supra,* 168 Md. 295, 177 A. 460; *Kelley v. Kelley,* 178 Md. 389, 398, 13 A. 2d 529. The burden of proof is upon the husband to establish the resulting trust and this can only be done by evidence showing a clear intention of the trust. *Johnson v. Johnson, supra,* 96 Md. 148, 53 A. 792; *Powell v. Mackenzie, supra,* 137 Md. 272, 112 A. 290. The appellee, in her own behalf, denied any agreement or understanding that she held the property for the benefit of herself and her husband. She stated that her first knowledge of such a claim was when the bill of complaint was filed. She further showed that the appellant had been a director in a bank in Washington, which went into the hands of receivers after March of 1933, when the directors were sued. Her husband did not contribute. The brother-in-law and sister of Mrs. Mountford, Mr. and Mrs. Hurley, testified that appellant said everything was in his wife's name and he had nothing to lose. Mr. John O. Gheen, one of the bank directors, testified that appellant said everything was in his wife's name and he didn't stand to lose anything. Dr. John Robert De Farges testified that appellant remarked that he had given everything to his wife, showing what confidence he had in her. A Mrs. Bromwell, who was formerly employed in the millinery store, testified that appellant said, "he wasn't worried to any extent, because everything they owned was in May's name and it would not affect him any." Mrs. Bromwell testified that the appellant had stated that he had nothing they could get. The testimony further shows that on February 27, 1919, both the appellant and the appellee made reciprocal wills in which they devised and bequeathed all of their property to each other. Appellant strongly relies on a statement made by appellee when examined by the chancellor, as to an understanding or agreement about the properties. It

is evident from the questions which followed that this agreement or understanding referred to the wills made at that time. Later in December of 1934, before the appellee went to the hospital for the serious operation referred to above, she made a will in the presence of her husband, which substantially gave him the income from the properties during his life and at his death the properties went to others. The appellee and one of her attorneys in the instant case, who was the attorney who drew the will, testified that when the wife asked the appellant whether the second will was satisfactory to him that he replied: "May, everything is yours. You can do with it as you please." The appellant denies that he made such a statement. He admits, however, that he did say that he would comply with anything she wanted to do and claims that the reason that he made this statement was because the doctor had advised him not to harass or upset his wife on the eve of the operation. He admits, however, that after his wife returned from the hospital, he did not raise any question about the disposition of the property in this will or ask her to change her will, and after this will was made, he continued to buy notes and put them in her possession as formerly.

Up until October, 1936, the wife had allowed the husband to manage the property acquired by their joint efforts practically as he wished, but in that year, on account of the trouble which had developed between them, the wife took over the books and told her husband that he was never going to get them back again and that she was taking care of things from that time on. In spite of this announcement, the husband, apparently thereafter, placed some of the property, which he now claims impressed with a trust, in her possession. It was said by this court in the case of *Powell v. Mackenzie, supra,* 137 Md. at page 271, 112 A. at page 292, in speaking of the intention to create a trust: "This presumption is one of fact, and not of law, and may therefore be rebutted by proof showing a contrary intention on the part of the pur-

chaser. But the evidence of such an intent should be substantial and convincing, for the 'principle of law that a purchase is presumed *prima facie* to be an advancement is not to be frittered away by mere refinements.' *Finch v. Finch,* 15 Ves. 43. And where such an intention is sought to be drawn from declarations of the nominal purchaser, the declarations must be direct and certain, and where possible should be corroborated by other facts and circumstances; for courts will not act upon mere declarations if they are conflicting, vague or inconsistent with themselves. 1 *Perry on Trusts,* p. 147." *Gorrell v. Gorrell,* 127 A. 346, 2 N. J. Misc. 871; *Werle v. Werle,* 332 Pa. 49, 1 A. 2d 244.

The case of *Porter v. Porter, supra,* recently before this court, in which the husband asked for practically the same relief, is strikingly similar to the instant one. In that case the husband alleged that he paid the entire purchase price of the real estate out of his money, believing that he would have the enjoyment of the real estate as a home during his lifetime, and that, if his wife should predecease him, he would immediately, by virtue of her will, become the owner of the real estate in fee simple and that he never intended it as a gift or advancement to his wife. In that case, as in the instant one, reciprocal wills were made by the parties, leaving the entire property to each other. After the purchase of the property their married life became deplorable and the wife obtained a divorce from her husband. The court said in that case at page 291 of 168 Md., at page 462 of 177A.: "From the testimony it is clear that the appellant was actuated by two considerations, in having the property conveyed to his wife: First, To free it from any possible claim that might be made by a daughter by a former wife, who had divorced him and obtained a substantial settlement or payment of money from him. Second: Out of love and affection for his wife, and to better and more certainly provide a home for his wife and their then unborn child, and as a future home for

all of them. These were his aims and purposes, and to accomplish them he formulated a definite plan, not contemplating or comprehending such a trust, for had a trust been designed or intended he would not have given or so placed the property in such a manner, or in such an estate as to enable her, if she chose, to defeat those purposes he desired, especially when acting under the guidance and direction of competent counsel." As in that case, the appellant here, when he made these purchases of real estate and securities, thought that these would be used as a future home for himself and his wife and the securities for their support. He admitted that he understood what was meant by joint savings accounts and how you worked them and stated the reason he didn't open a joint account and have the securities in their joint names was that he did not want to mess it up in those days in a joint account. He wanted to keep it separate from the business. Being familiar with the result of a joint account and not seeing fit to take advantage of the opportunity afforded him to so place the property, he is now complaining as to the result of the risk which he assumed. As pointed out by the chancellor below, these results were accomplished for years. From the evidence before us, he never thought of an agreement or understanding of a trust until the divorce suit was filed against him. It must be concluded in this case as in the case of *Porter v. Porter, supra,* 168 Md. at page 295, 177 A. at page 463: "The evidence in this case does not measure up to that standard of strength. There is too much doubt and too many intervening circumstances that tend to take away the convincing and conclusive character of the testimony that is required in such cases as this to rebut the strong presumption that the law creates in favor of the legal title, as evidenced by the deed and especially in favor of the legal title, where the property had been conveyed to a wife, and, in view of the legal requirements previously stated, it is our opinion that the title to this property, as it

now exists, should not be disturbed, * * *." He is asking this court to do for him what he did not do for himself. In the instant case, it is admitted by the appellant that the funds used in the purchase of the properties in dispute were not furnished by him alone, but were derived from the business operated by both the appellant and the appellee. In other cases similarly decided by this court, the money has been provided by the husband alone. *Powell v. Mackenzie, supra; Porter v. Porter, supra.*

There is much conflict in the testimony as to the amount of the securities now in the possession of the appellee, but in view of our ruling, the determination of this question is not pertinent.

In reference to the furniture in the home in Chevy Chase, as pointed out by the chancellor below, the appellant testified that he had never parted with his title to that and there can be no trust therein, for according to his own allegation, title is not in anyone else.

As to the action of the chancellor in sustaining the objection to the second exception in the testimony of Donna M. Powell, the answer to the question was not responsive and was not harmful to either of the parties to the cause. As to the ruling of the chancellor on the eighth exception in the testimony of the same witness, this answer is merely a conclusion on the part of the witness and the objection was properly sustained.

From a consideration of the testimony in this case applied to the legal principles so often announced by this court, it cannot be concluded that the testimony is sufficient to rebut the strong presumption that the law creates in favor of legal title, particularly when it is held by a wife. The chancellor was therefore correct in dismissing the appellant's bill of complaint.

> *Decree affirmed, costs to be paid by appellant.*