MARY LOUISE FAROOQ *v.* ADOLPH W. COSNER

[No. 1017, September Term, 1974.]

*Decided June 30, 1975.*

The cause as argued before MORTON, GILBERT and LOWE, JJ.

*Mercedes C. Samborsky* for appellant.

*Stephen A. Tarrant* for appellee.

LOWE, J., delivered the opinion of the Court.

The adversary system of jurisprudence works quite well so long as parties on the same side of a case have a similarity of interest in the outcome. When parties so aligned do not, as when tenants by the entirety become divorced, the adversary system is hindered perhaps, but has the capacity to equitably overcome the incongruity.

The appellee, Adolph W. Cosner (Adolph) sought by suit brought in the Circuit Court for Harford County to impose a resulting trust upon two parcels of land, one consisting of 41.8 acres, the other 7.5 acres. The titles to both were in the name of his son Jerry Adolph Cosner (Jerry) and Jerry's former wife Mary Louise Farooq. Because the land was conveyed to "Jerry Adolph Cosner and Mary Cosner, his wife" in both instances, the appellee sued his son Jerry as well as Jerry's former wife. Although Jerry was thus compelled to join his erstwhile wife, it is apparent from his testimony and the counter-productive efforts of his counsel that his loyalties lay elsewhere. Shielded only by the strong presumption in favor of legal title as evidenced by the deeds, *Mountford v. Mountford,* 181 Md. 212, Mrs. Farooq faces the frontal assault of a father, buttressed by a flank

attack from the son. While none of the parties proclaims eleemosynary motives, we are relieved of the necessity to determine who among them is most avaricious, the father, the son or the erstwhile spouse.

Initially we deny appellee's motion to dismiss the appeal because only one of the "two co-trustees" has appealed. Appellee's son was satisfied, indeed quite pleased, with the result below. Since the chancellor declared a resulting trust and only appellant Farooq appealed, appellee now asserts a violation of the rule that co-trustees must act with unanimity. In *Sokol and Eliasberg v. Nattans*, 23 Md. App. 600, 609, we recognized that the interest which a trustee has in the subject matter of the trust corpus was of a dual nature and decided that a right of appeal is universally recognized where a trustee's personal rights are affected by the order or judgment. Furthermore, the unanimity rule, applicable to trustees' actions in execution of trust-imposed obligations, can hardly be extended to a suit defending against the imposition of a constructive trust. The motion here is denied and we proceed to the merits of the case.

## The Facts

Adolph and his former wife Rhoda (the father and mother of Jerry) sold a 79 acre tract of land to John W. Smith for $15,000. The Cosners took back a $7500 second mortgage. Soon thereafter some domestic turbulence developed and the marriage of Adolph and Rhoda erupted into a full scale legal storm. Their jointly owned real estate was sold at judicial sale and Adolph found himself faced with limited resources, mounting liabilities (alimony and support) and an estranged wife's counsel ever vigilant for signs of attachable assets.

For four years John Smith had been unable to pay even the interest on the second mortgage and while Adolph presumably did not press as to his one-half interest, Rhoda through her attorney did.

41.8

Consequently Mr. Smith proposed to resell to Adolph a

substantial portion of the land that Adolph and Rhoda had sold him. A bargain was struck and contract executed by Adolph and Smith to sell 41.8 acres for a contract price of $9,356.25. Fearing his former wife would somehow thwart his purpose, Adolph elected to have his son Jerry and daughter-in-law (now Mrs. Farooq) take title in their names. The purchase price was paid by satisfaction of the second mortgage including interest and costs, one-half of which Adolph simply absorbed. Rhoda's mortgage interest was paid off through Jerry who submitted to her a check with Jerry's name signed by Adolph (allegedly drawn from Adolph's funds) and a 30 day demand note from Jerry to his mother for $2,593.75. According to Adolph's version, that note was ultimately paid off with $943.75 of his own money and $1,650.00 of Jerry's money, a loan to Adolph. This testimony was undoubtedly offered to help offset the *Mountford* presumption of title from the deed, and as tending to prove that payment of the purchase price by Adolph gave rise to a resulting trust in his favor. *Fitch v. Double "U" Sales Corp.*, 212 Md. 324. Appellee thus took on the heavy burden of proving by plain, unequivocal and convincing evidence that the beneficial interest did not follow the legal title. *Siemiesz v. Amend*, 237 Md. 438.

The facts established evidencing the resulting trust in favor of Adolph may be summarized as:

1. Adolph negotiated and contracted to make the purchase.
2. Jerry, one of the alleged trustees, admitted understanding the trust relationship and purpose.
3. Jerry testified that he explained it to and had to convince appellant because of her fear of taxes and other expenses accruing as a personal liability. She was persuaded that Adolph would prevent this.
4. The testimony clearly showed the purchase price was paid by Adolph (although advanced in part by Jerry), involving the presumption that

"where one purchases land, pays for it with his own money, and takes a conveyance in the name of another a trust results in favor of the purchaser, unless there be circumstances rebutting that presumption." *Taylor v. Merc.-Safe Dep. & Trust,* 269 Md. 531, 539 citing *Dorsey v. Clark,* 4 H & J 551. There is no evidence that Mrs. Farooq either paid or subjected herself to liability for any part of that purchase price.

5. Grantor and his counsel recognized Adolph as the beneficial purchaser.

6. Adolph ordered, and ultimately paid for, a survey, although the surveyor's testimony indicated he had looked to Jerry at Adolph's instance for a delinquent payment.

Although Jerry's blood relationship to his father and severed marital ties with appellant may suggest adverse motives, his position and credibility were vigorously attacked but little shaken by appellant who, in her own testimony, did not contradict Jerry's testimony without equivocation. We cannot find the chancellor's opinion that

" . . . Plaintiff and Defendants intended that Plaintiff [Adolph] would retain the beneficial interest in the property . . .",

to be clearly erroneous, Md. Rule 1086, as to the 41.8 acre tract.

### 7.5

The chancellor, however, concluded his opinion by saying that:

"The court is convinced of the merit of Plaintiff's claims and therefore gives Judgment for Plaintiff as to *both* tracts of land." [Emphasis added].

Our review of the record compels us to disagree. As to the subsequent purchase of 7.5 acres we find little if any

evidence of a resulting trust, let alone evidence that is so clear and strong as to remove every reasonable doubt as to its existence. *Gray v. Harriet Lane Home*, 192 Md. 251, 265.

The second tract was transferred six months after transfer of the first which Mr. Smith elected to sell. It consisted of only 7.5 acres abutting the 41.8 acre parcel. The purchase price was $2500.00 and again father and son testified that although title was in the name of Jerry and appellant, that device was utilized, as before, because of the domestic feud still running rife between Adolph and Rhoda. There is no testimony that the underlying intent of this transaction was explained to Mrs. Farooq, as it was on the 41.8 acre purchase. Nor was there evidence from which it could be inferred that she knew or should have known of such possible intent. To impute to the six-month delayed purchase of parcel two, Mrs. Farooq's express knowledge of that intended purpose as to parcel one would require more imagination than reason. The evidence was all to the contrary. The settlement sheet showed the grantees to be "Jerry Adolph Cosner and Mary Cosner, his wife." The purchase price was provided by mortgage in the amount of $3,000.00 [1] to which both appellant and her then husband were alone committed. Since appellee neither advanced purchase price nor indebted himself on the purchase money mortgage, the resulting trust presumption from payment of purchase price was not available to him even though there was evidence that he made some of the mortgage payments. Appellee's alleged "intent" to pay the indebtedness incurred by appellant and her husband did not give rise to a resulting trust, only payment of the purchase price "with his own money" would have. *Taylor, supra*, 269 Md. 531. Although the evidence of intent was admissible through both father and son, *Taylor*, 269 Md. at 540, its admission into evidence was to no avail. To permit so broad an inference would jeopardize every title evidenced by deed since the state of mind of parties collateral to a sale and purchase would

---

1. The $500 excess over purchase price was never expressly explained. Presumably, however, it was substantially consumed by settlement costs.

create a presumption undermining them. *Mountford, supra,* 181 Md. 212.

Shorn of the presumption arising from payment of purchase money, appellee offers his *intent to repay* the purchase price, *i.e.,* to make payments on the mortgage incurred by appellant and Jerry, against the documented proof that the source of payment was appellant and Jerry. That evidence was in the settlement and mortgage records and was uncontradicted.

To rebut Jerry's testimony supporting his father's "intent" to repay, appellant sought to show Jerry's state of mind after their separation, following the purchase. In a domestic proceeding, Jerry charged the appellant with her share of the taxes and the mortgage and deducted this amount from the child support and alimony due her. The chancellor here erroneously refused to consider that evidence, although it was admitted, as well as the evidence that Jerry Cosner paid off two-thirds of the mortgage principal. The chancellor stated in his opinion that:

" . . . the rule of *Johnson v. Johnson* [96 Md. 144] makes clear the duty of the Court to consider only events prior to or contemporaneous with the time of conveyance in determining whether or not a resulting trust has arisen."

Such is not the holding of *Johnson.* That case precludes subsequent evidence of the acts or declarations of one presumed to be the donor of an advancement to the object of his natural bounty for the purpose of overcoming the presumption of an advancement. *Johnson* is totally inapposite, either as to the evidence of Jerry's payment of the mortgage, or of his reducing Mrs. Farooq's alimony and support by her share of that mortgage and the taxes.

Even if appellee's mortgage payments were treated as part of the purchase price, that he did so in the name of his son and daughter-in-law for whom he was under a natural or moral obligation to provide, *Lacey v. Van Royen,* 259 Md. 80, 89;[2] *Mutual Fire Ins. Co. in Balt. v. Deale,* 18 Md. 26,

2. Judge Smith's broad analysis and complete discussion of the law of

would have been *prima facie* an advancement or provision, and absent evidence to the contrary,[3] no presumption of a resulting trust would have arisen from the fact of the payment of the purchase money. It is this presumption of advancement that cannot be rebutted by evidence of acts or declarations made subsequent to the purchase, *Johnson*, 96 Md. at 148 not the presumption of a resulting trust (which presumption never arose). Accordingly, the evidence that the father made *subsequent* payments upon part of the mortgage indebtedness of his son and daughter-in-law was *not* admissible to rebut the advancement presumption. The prerequisite inferential or presumptive chain is incomplete. Since the purchase price was not paid by appellee there was no presumption of a trust. Evidence of subsequent mortgage payments, if admissible, served at best to raise a presumption of advancement. The quantum of evidence produced by appellee that the 7.5 acre tract was impressed with a resulting trust in his favor was naught.

Appellant submits further contentions to prevent appellee from prevailing which include the clean hands doctrine, laches and estoppel. These are all without merit.

1. There being no evidence of abuse of the trial court's discretion in application of the clean hands doctrine, the chancellor's discretion will be undisturbed. *Space Aero Products Co. v. R.E. Darling Co.*, 238 Md. 93.

2. Since appellant denied ever having repudiated the trust we are unable to determine when limitations began to run. Her co-trustee has never repudiated. See *Mathias v. Segaloff*, 187 Md. 690.

   An annotation in 45 ALR 2d 382 indicates that limitations is inapplicable to a beneficiary in possession of the property subject to a

---

resulting trusts could, under the facts, be dispositive of the issues relating to the 7.5 acre tract.

**3.** We note here the strong evidence that was contrary to the presumption of advancement as to the 41.8 acre purchase.

resulting trust. The evidence here is that the father built his home on the 41.8 acre tract.

3. For the similar reason of failure to repudiate, the defense of laches is inappropriate. Scott, *Law of Trusts,* §409.

4. Finally estoppel is not available to appellant as to the 41.8 acre tract since there is no evidence that she moved to her detriment in reliance upon the representations of appellee. *Lusby v. First Nat'l Bank,* 263 Md. 492, 505.

In conclusion we affirm the chancellor below in granting judgment for appellee as to the 41.8 acre tract. We reverse that judgment as it applies to the 7.5 acre tract.

> *Judgment affirmed in part and reversed in part.*
>
> *Costs to be divided equally between appellant and appellee.*